# LEWIS, DIRECTOR, ARIZONA DEPARTMENT OF CORRECTIONS, ET AL. *v.* JEFFERS

No. 89–189.   Argued February 21, 1990—Decided June 27, 1990

O'CONNOR, J., delivered the opinion of the Court, in which REHNQUIST, C. J., and WHITE, SCALIA, and KENNEDY, JJ., joined. BRENNAN, J., filed a dissenting opinion, in which MARSHALL, J., joined, *ante*, p. 674. BLACKMUN, J., filed a dissenting opinion, in which BRENNAN, MARSHALL, and STEVENS, JJ., joined, *post*, p. 784.

*Gerald R. Grant*, Assistant Attorney General of Arizona, argued the cause for petitioners. With him on the briefs were *Robert K. Corbin*, Attorney General, and *Jessica Gifford Funkhouser*.

*James S. Liebman*, by appointment of the Court, 493 U. S. 952, argued the cause for respondent. With him on the brief were *Donald S. Klein* and *Frank P. Leto*.*

---

*\*Kent S. Scheidegger* filed a brief for the Criminal Justice Legal Foundation as *amicus curiae* urging reversal.

JUSTICE O'CONNOR delivered the opinion of the Court.

This case presents issues pertaining to federal court review of a state court's determination that an offense was committed "in an especially heinous, cruel or depraved manner," Ariz. Rev. Stat. Ann. § 13–703(F)(6) (1989).

## I

The relevant facts are undisputed. The evidence at trial showed that in May 1976, police arrested respondent Jimmie Wayne Jeffers and his girlfriend, Penelope Cheney, on state law charges of possession of narcotics and receipt of stolen property. Respondent posted bond for Cheney, but was unable to post bond for himself and remained in custody at the Pima County Jail. While in jail, respondent received reports that Cheney had been cooperating with police by providing the police with information about respondent and certain heroin transactions. Respondent wrote a note to another jail inmate offering him money if he would kill Cheney. The detention officer who was supposed to deliver the note read it and seized it.

In October 1976, respondent was released from jail on bond pending appeal of his convictions. About a week later, he met Doris Van Der Veer and began living with her at a motel in Tucson. Respondent subsequently invited Cheney to the motel in order to provide her with some heroin.

On the day of the murder, respondent told Van Der Veer that Cheney was coming over and that they wished to be alone. When Cheney arrived, respondent introduced her to Van Der Veer, who then excused herself. After about 2½ hours, Van Der Veer returned to the motel room and knocked on the door. Respondent admitted her, pointed a gun at her, and ordered her to sit in a chair and be quiet.

Upon entering the motel room, Van Der Veer saw Cheney lying unconscious on the bed. Cheney appeared cyanotic. Respondent injected a fluid into Cheney's hand and told Van Der Veer that he had "given her enough shit to kill a horse

and this bitch won't die." Van Der Veer noticed foam coming from Cheney's mouth, which she recognized from her training as a nurse to be a sign of heroin overdose. Van Der Veer checked Cheney's condition and determined that she was still alive. Van Der Veer asked respondent if he was going to help Cheney, to which he responded, "No, I'm going to kill her."

Respondent then removed the belt from around Cheney's waist and began to choke her with it. He soon discarded the belt and choked her with his bare hands. Van Der Veer urged him to stop, saying Cheney would probably die anyway, but respondent replied, "No, I've seen her this way before and she's come out of it."

After strangling Cheney, respondent instructed Van Der Veer to check Cheney's pulse. Van Der Veer found no pulse and reported that Cheney was dead. Respondent then ordered Van Der Veer to inject more heroin into Cheney and to choke her while he took pictures. Van Der Veer complied. Respondent told Van Der Veer that he did this to have proof that she was an accomplice. Respondent then beat Cheney with his hands several times, calling her a "bitch" and a "dirty snitch" and stating, as each blow landed, that "[t]his one is for so and so [naming several names]." Respondent then dragged the body off the bed and placed it in the shower stall. After three days, when the body began to smell, respondent and Van Der Veer wrapped the body in newspaper and plastic garbage bags, placed it in a sleeping bag, and transported it to a secluded area, where they buried it in a shallow grave.

A jury convicted respondent of the first-degree murder of Cheney. After a sentencing hearing, the trial court found two aggravating circumstances and no mitigating factors. In accordance with the Arizona death penalty statute, Ariz. Rev. Stat. Ann. § 13–454 (Supp. 1973) (currently Ariz. Rev. Stat. Ann. § 13–703 (1989)), respondent was sentenced to death. App. 5–10.

On direct review of his conviction and sentence, the Arizona Supreme Court, following this Court's decision in *Lockett* v. *Ohio*, 438 U. S. 586 (1978), vacated respondent's death sentence and remanded for resentencing. See *State* v. *Watson*, 120 Ariz. 441, 586 P. 2d 1253 (1978) (requiring the trial court to consider nonstatutory mitigating factors), cert. denied, 440 U. S. 924 (1979). At the second sentencing hearing, the trial court again found two aggravating circumstances beyond a reasonable doubt: that respondent had created a grave risk of death to another person (Van Der Veer) in the commission of the murder and that respondent committed the murder in an especially heinous, cruel, and depraved manner. See Ariz. Rev. Stat. Ann. §§ 13–703(F)(3) and (6) (1989).[1] The

---

[1] Section 13–703(F) provides:

"F. Aggravating circumstances to be considered shall be the following:

"1. The defendant has been convicted of another offense in the United States for which under Arizona law a sentence of life imprisonment or death was imposable.

"2. The defendant was previously convicted of a felony in the United States involving the use or threat of violence on another person.

"3. In the commission of the offense the defendant knowingly created a grave risk of death to another person or persons in addition to the victim of the offense.

"4. The defendant procured the commission of the offense by payment, or promise of payment, of anything of pecuniary value.

"5. The defendant committed the offense as consideration for the receipt, or in expectation of the receipt, of anything of pecuniary value.

"6. The defendant committed the offense in an especially heinous, cruel or depraved manner.

"7. The defendant committed the offense while in the custody of the state department of corrections, a law enforcement agency or county or city jail.

"8. The defendant has been convicted of one or more homicides, as defined in § 13–1101, which were committed during the commission of the offense.

"9. The defendant was an adult at the time the offense was committed or was tried as an adult and the victim was under fifteen years of age.

"10. The murdered individual was an on duty peace officer who was killed in the course of performing his official duties and the defendant knew, or should have known, that the victim was a peace officer."

court found no mitigating factors and thereupon resentenced respondent to death.[2] App. 11–16.

On direct appeal, the Arizona Supreme Court affirmed the convictions and sentences. *State* v. *Jeffers,* 135 Ariz. 404, 661 P. 2d 1105, cert. denied, 464 U. S. 865 (1983). With regard to respondent's death sentence, the court stated that, under Arizona law, "this court independently reviews the facts that the trial court found established the presence or absence of aggravating and mitigating circumstances, and we determine for ourselves if the latter outweigh the former when we find both to be present." 135 Ariz., at 428, 661 P. 2d, at 1129 (citations omitted). Applying this standard, the court reversed the trial court's finding that respondent "knowingly created a grave risk of death to another person . . . in addition to the victim of the offense," Ariz. Rev. Stat. Ann. § 13–703(F)(3) (1989).

The court then reviewed the trial court's finding that respondent "committed the offense in an especially heinous, cruel or depraved manner," § 13–703(F)(6). The court noted that it had interpreted and applied this provision in light of the dictionary definitions of the words used:

> "The element of cruelty involves the pain and the mental and physical distress visited upon the victims. Heinous and depraved involve the mental state and attitude of the perpetrator as reflected in his words and actions. 'Heinous' means 'hatefully or shockingly evil; grossly bad'; 'cruel' means 'disposed to inflict pain esp. in a wanton, insensate or vindictive manner; sadistic'; and 'de-

---

[2] Arizona Rev. Stat. Ann. § 13–703(E) (1989) provides:

"E. In determining whether to impose a sentence of death or life imprisonment without possibility of release on any basis . . . the court shall take into account the aggravating and mitigating circumstances included in subsections F and G of this section and shall impose a sentence of death if the court finds one or more of the aggravating circumstances enumerated in subsection F of this section and that there are no mitigating circumstances sufficiently substantial to call for leniency."

praved' means 'marked by debasement, corruption, perversion or deterioration.'" 135 Ariz., at 429, 661 P. 2d, at 1130 (citations omitted).

Independently reviewing the evidence, the court concluded that the State had failed to prove the element of cruelty beyond a reasonable doubt:

> "There was no evidence that the victim suffered any pain. It appears from the record that after the injection of heroin, the victim lost consciousness and never regained it before she died. Therefore, the victim experienced no pain or mental suffering and the murder was not 'cruel' for purposes of A. R. S. § 13–703(F)(6)." *Id.*, at 429, 661 P. 2d, at 1130.

The court found, however, that "the events surrounding the murder itself support the trial court's finding that the murder was 'especially heinous . . . and depraved.'" *Id.*, at 430, 661 P. 2d, at 1131. The court noted that it had recently delineated factors to be considered in determining whether the offense was committed in a heinous or depraved manner and that the infliction of gratuitous violence on the victim was one factor. See *ibid.* (citing *State* v. *Gretzler*, 135 Ariz. 42, 659 P. 2d 1, cert. denied, 461 U. S. 971 (1983), and *State* v. *Ceja*, 126 Ariz. 35, 612 P. 2d 491 (1980)). The court then observed that, in the instant case, "the defendant climbed on top of the dead victim and hit her in the face several times which eventually resulted in additional wounds and bleeding." 135 Ariz., at 430, 661 P. 2d, at 1131. The court further noted that the apparent relish with which the defendant commits the murder was another factor. *Ibid.* (citing *State* v. *Bishop*, 127 Ariz. 531, 622 P. 2d 478 (1980)). Finding that "while Jeffers was beating the victim he called her 'a bitch and a dirty snitch' and with each striking blow said, 'This one is for so and so. [naming several names],'" the court concluded: "This evidences the relish with which [respondent] committed the murder. In light of these prior decisions and

the *Gretzler* considerations, we find that the remarks made by [respondent], while at the same time beating his victim, establish that the offense was committed in an especially heinous and depraved manner." 135 Ariz., at 430, 661 P. 2d, at 1131.

The court then rejected respondent's contention that the "especially heinous, cruel or depraved" aggravating circumstance, as construed and applied by the court, was unconstitutionally broad. Relying on its decision in *State* v. *Gretzler*, *supra*, the court held that "[e]ach element—cruel, heinous, and depraved—has been narrowly defined and construed . . . to meet constitutional standards." 135 Ariz., at 430, 661 P. 2d, at 1131. The court explained:

> "We have been insistent that the murder be *especially* cruel or *especially* depraved before [§ 13–703(F)(6)] would apply. We have clearly defined the terms and have delineated factors to guide us in determining if the crime was indeed committed in such a manner. . . . Further the case law reveals that § (F)(6) is not applicable to any and all murders, this court has narrowly limited its applicability to cases which stand apart from the norm." *Ibid.* (citations omitted).

Finally, based on its own review of the evidence, the court affirmed the trial court's determinations that no mitigating factors existed that were sufficiently substantial to call for leniency and that the factors in mitigation did not outweigh the aggravating circumstances. *Id.*, at 431–432, 661 P. 2d, at 1132–1133. The court concluded that respondent's death sentence was not disproportionate to the sentence imposed in similar cases and that "[w]e have reviewed the entire record pursuant to A. R. S. § 13–4035 and found no fundamental error. In our independent determination we found one aggravating factor—that the offense was committed in an especially heinous and depraved manner—and no mitigating factors sufficiently substantial to call for leniency." *Id.*, at 432, 661 P. 2d, at 1133.

Respondent then petitioned for a writ of habeas corpus in the United States District Court for the District of Arizona, alleging, among other claims, that Arizona's interpretation of its "especially heinous . . . or depraved" aggravating circumstance was unconstitutionally overbroad and vague. The District Court reiterated that, under Arizona law, "[a] murder that is especially heinous and depraved includes the infliction of gratuitous violence upon the victim and the indication that the defendant committed the crime with relish." *Jeffers* v. *Ricketts*, 627 F. Supp. 1334, 1360 (Ariz. 1986) (citations omitted). The District Court then noted:

> "The evidence in this case indicates that the victim, Penny, had either taken or was injected by Jeffers with such a sufficiently large dose of heroin that she lost consciousness. Even after she lost consciousness, Jeffers injected her with more heroin. When this did not kill her, he attempted to strangle her with a belt and finally accomplished his intended purpose by strangulation with his hands. He then required the eyewitness, at gun point, to perform the same acts on the corpse while he took pictures. He then climbed on top of the corpse and inflicted blows to the face. While striking the corpse, he stated that each blow was for one of the persons that Jeffers believed Penny to have been responsible for their arrest due to narcotic trafficking activities with Jeffers. He then pulled the corpse across the floor to the shower where it remained for three days." *Ibid.*

Based on these facts, the court rejected respondent's vagueness and overbreadth challenge to the "especially heinous . . . or depraved" aggravating circumstance. *Ibid.*

A divided panel of the Court of Appeals for the Ninth Circuit vacated respondent's death sentence on the ground that the "especially heinous . . . or depraved" circumstance was unconstitutionally vague as applied to him. *Jeffers* v. *Ricketts*, 832 F. 2d 476, 482–486 (1987). As an initial matter, the Court of Appeals agreed with the District Court that the

subsection (F)(6) aggravating circumstance was not unconstitutionally vague on its face. *Id.*, at 482 (citing *Chaney* v. *Lewis*, 801 F. 2d 1191, 1194–1196 (CA9 1986), cert. denied, 481 U. S. 1023 (1987)).

The Court of Appeals then held, however, that "[w]hile *Chaney* establishes that the Arizona statute is not void on its face and is capable of constitutional application, it naturally does not answer the question whether the Arizona statute was constitutionally applied to Jeffers in this case." 832 F. 2d, at 482. Reviewing a number of Arizona Supreme Court cases defining and applying the "especially heinous . . . or depraved" circumstance, the Court of Appeals compared the facts of those cases to the facts of this case and concluded that "the standard of heinousness and depravity delineated in prior Arizona cases cannot be applied in a principled manner to Jeffers." *Id.*, at 485. The Court of Appeals therefore struck down respondent's death sentence as arbitrary: "To apply the standard of especial heinousness and depravity to Jeffers' case when the facts do not permit it is arbitrary or capricious, and is therefore an unconstitutional application of the standard. . . . Arizona's existing standard . . . cannot be extended to Jeffers' case without losing its ability to distinguish in a principled manner between those it condemns to death and those it does not." *Id.*, at 486 (citing *Godfrey* v. *Georgia*, 446 U. S. 420, 428 (1980)). The dissenting member of the panel maintained that "the majority [was] doing little more than second-guessing the Arizona Supreme Court's interpretation of facts that quite reasonably fit within the statutory definition of aggravating circumstances." 832 F. 2d, at 487.

We granted certiorari, *Ricketts* v. *Jeffers*, 493 U. S. 889 (1989), and now reverse.

II

Petitioners contend that this case presents the question whether a federal court may make a *de novo* review of the evidence supporting a state court's finding of a facially con-

stitutional aggravating circumstance. Respondent maintains that this case presents only the question whether the Court of Appeals correctly held that Arizona's construction of the subsection (F)(6) aggravating circumstance in this case contravened this Court's decisions in *Godfrey* v. *Georgia, supra,* and *Maynard* v. *Cartwright,* 486 U. S. 356 (1988). We begin our analysis with respondent's contention.

## A

Our capital punishment doctrine is rooted in the principle that " '[t]he Eighth and Fourteenth Amendments cannot tolerate the infliction of a sentence of death under legal systems that permit this unique penalty to be . . . wantonly and . . . freakishly imposed.' " *Gregg* v. *Georgia,* 428 U. S. 153, 188 (1976) (joint opinion of Stewart, Powell, and STEVENS, JJ.) (quoting *Furman* v. *Georgia,* 408 U. S. 238, 310 (1972) (Stewart, J., concurring)); see also *Furman, supra,* at 313 (WHITE, J., concurring) (invalidating capital punishment statute where "there is no meaningful basis for distinguishing the few cases in which [the death penalty] is imposed from the many cases in which it is not"). Accordingly, "where discretion is afforded a sentencing body on a matter so grave as the determination of whether a human life should be taken or spared, that discretion must be suitably directed and limited so as to minimize the risk of wholly arbitrary and capricious action." *Gregg, supra,* at 189.

This principle requires a State to "channel the sentencer's discretion by 'clear and objective standards' that provide 'specific and detailed guidance,' and that 'make rationally reviewable the process for imposing a sentence of death.' " *Godfrey, supra,* at 428 (footnotes omitted). A State's definitions of its aggravating circumstances—those circumstances that make a criminal defendant "eligible" for the death penalty—therefore play a significant role in channeling the sentencer's discretion. The Court in *Gregg,* for example, held that Georgia's "outrageously or wantonly vile" aggravat-

ing circumstance, Ga. Code Ann. § 27–2534.1(b)(7) (Supp. 1975) ("outrageously or wantonly vile, horrible or inhuman in that it involved torture, depravity of mind, or an aggravated battery to the victim"), was not unconstitutionally vague because the Georgia courts could give it a narrowing construction. See 428 U. S., at 201 (joint opinion of Stewart, Powell, and STEVENS, JJ.) (Although "arguabl[y] . . . any murder involves depravity of mind or an aggravating battery," there was "no reason to assume that the Supreme Court of Georgia will adopt such an open-ended construction"); see also *Proffitt* v. *Florida*, 428 U. S. 242, 255 (1976) (joint opinion of Stewart, Powell, and STEVENS, JJ.) (upholding Florida's "especially heinous, atrocious or cruel" aggravating circumstance, Fla. Stat. Ann. § 921.141(5)(h) (Supp. 1976–1977), on the ground that the Supreme Court of Florida had restricted the circumstance to include only "'the conscienceless or pitiless crime which is unnecessarily torturous to the victim'").

In *Godfrey* v. *Georgia, supra,* however, a plurality of the Court held that although the Georgia Supreme Court had adopted a narrowing construction of Georgia's subsection (b)(7) aggravating circumstance, the death sentence at issue could not stand because no evidence existed that the state courts had applied the narrowing construction to the facts of that case. 446 U. S., at 432 ("The circumstances of this case . . . do not satisfy the criteria laid out by the Georgia Supreme Court itself" in the cases adopting the narrowing construction). Because the Georgia courts had not applied the narrowing construction, the plurality considered whether the Georgia Supreme Court, in affirming the death sentence, had nevertheless applied a constitutional construction of the subsection (b)(7) aggravating circumstance. *Id.,* at 432–433. The plurality concluded that the state court had not, because "[t]here is no principled way to distinguish this case, in which the death penalty was imposed, from the many cases in which it was not." *Id.,* at 433.

We have reiterated the general principle that aggravating circumstances must be construed to permit the sentencer to make a principled distinction between those who deserve the death penalty and those who do not. See *Spaziano* v. *Florida*, 468 U. S. 447, 460 (1984) ("If a State has determined that death should be an available penalty for certain crimes, then it must administer that penalty in a way that can rationally distinguish between those individuals for whom death is an appropriate sanction and those for whom it is not"); *Zant* v. *Stephens*, 462 U. S. 862, 877 (1983) ("[A]n aggravating circumstance must genuinely narrow the class of persons eligible for the death penalty and must reasonably justify the imposition of a more severe sentence on the defendant compared to others found guilty of murder") (footnote omitted); see also *Barclay* v. *Florida*, 463 U. S. 939, 960 (1983) (STEVENS, J., concurring in judgment) ("A constant theme of our cases—from *Gregg* and *Proffitt* through *Godfrey*, *Eddings*, and most recently *Zant*—has been emphasis on procedural protections that are intended to ensure that the death penalty will be imposed in a consistent, rational manner"); *Lowenfield* v. *Phelps*, 484 U. S. 231, 244–246 (1988).

Indeed, in *Maynard* v. *Cartwright*, 486 U. S. 356 (1988), we applied the teachings of *Godfrey* to hold that the Oklahoma courts had not construed Oklahoma's "especially heinous, atrocious, or cruel" aggravating circumstance in a manner sufficient "to cure the unfettered discretion of the jury and to satisfy the commands of the Eighth Amendment." 486 U. S., at 364. We concluded that the Oklahoma court's "conclusion that on th[e] facts [of the case] the jury's verdict that the murder was especially heinous, atrocious, or cruel was supportable did not cure the constitutional infirmity of the aggravating circumstance." *Ibid.*

Respondent's reliance on *Godfrey* and *Cartwright*, however, does not yield the result he seeks. Unlike in *Godfrey*, there is no dispute in this case that the Arizona Supreme Court applied its narrowing construction of Arizona's subsec-

tion (F)(6) aggravating circumstance to the facts of respondent's case. See *State* v. *Jeffers*, 135 Ariz., at 429–430, 661 P. 2d, at 1130–1131. More important, the Court of Appeals noted that the subsection (F)(6) aggravating circumstance, as interpreted by the Arizona courts, was not unconstitutionally vague on its face. See 832 F. 2d, at 482 (citing *Chaney* v. *Lewis*, 801 F. 2d, at 1194–1196). "The Arizona Supreme Court appears to have sufficiently channeled sentencing discretion to prevent arbitrary and capricious capital sentencing decisions. The court has defined each of the factors set forth in section 13–703(F)(6). These definitions have been applied consistently." *Chaney, supra,* at 1195 (citations and quotations omitted).

Even had the Court of Appeals not so held, we resolved any doubt about the matter in *Walton* v. *Arizona, ante,* p. 639, where we upheld, against a vagueness challenge, the precise aggravating circumstance at issue in this case. See *ante,* at 652–655. Our holding in *Walton,* which disposes of respondent's claim that Arizona has not construed its subsection (F)(6) aggravating circumstance in a constitutionally narrow manner, bears repeating here:

> "Recognizing that the proper degree of definition of an aggravating factor of this nature is not susceptible of mathematical precision, we conclude that the definition given to the 'especially cruel' provision by the Arizona Supreme Court is constitutionally sufficient because it gives meaningful guidance to the sentencer. Nor can we fault the state court's statement that a crime is committed in an especially 'depraved' manner when the perpetrator 'relishes the murder, evidencing debasement or perversion,' or 'shows an indifference to the suffering of the victim and evidences a sense of pleasure' in the killing." *Ante,* at 655 (citation omitted).

*Walton* therefore squarely forecloses any argument that Arizona's subsection (F)(6) aggravating circumstance, as construed by the Arizona Supreme Court, fails to "channel the

sentencer's discretion by 'clear and objective standards' that provide 'specific and detailed guidance,' and that 'make rationally reviewable the process for imposing a sentence of death.'" *Godfrey*, 446 U. S., at 428 (footnotes omitted).

The dissent's suggestion that our reliance on *Walton* is misplaced is without merit. We granted certiorari in *Walton* to decide "[w]hether Arizona's 'especially heinous, cruel or depraved' aggravating circumstance, as interpreted by the Arizona courts, fails to channel the sentencer's discretion as required by the Eighth Amendment," Brief for Petitioner in *Walton* v. *Arizona*, O. T. 1989, No. 88–7351, p. i, and our judgment in that case plainly rested on a negative answer to that question. See *ante*, at 652–656; *ante*, at 674 (SCALIA, J., concurring in part and concurring in judgment); see also *ante*, at 692–699 (BLACKMUN, J., dissenting) (discussing vagueness of the state courts' construction of the "especially heinous . . . or depraved" aggravating circumstance). We decline the dissent's apparent invitation to reconsider arguments addressed and rejected in a decision announced only today.

### B

In light of the Court of Appeals' rejection of respondent's facial challenge, respondent defends the decision below on the ground that, even if Arizona has adopted a constitutionally narrow construction of its subsection (F)(6) aggravating circumstance, and even if the Arizona Supreme Court applied that narrowing construction to the facts of his case, the aggravating circumstance may nevertheless be vague "as applied" to him. We rejected an identical claim in *Walton*, however, and the conclusion we reached in *Walton* applies with equal force in this case:

> "Walton nevertheless contends that the heinous, cruel, or depraved factor has been applied in an arbitrary manner and, as applied, does not distinguish his case from cases in which the death sentence has not been imposed. In effect Walton challenges the proportionality review of

the Arizona Supreme Court as erroneous and asks us to overturn it. This we decline to do, for we have just concluded that the challenged factor has been construed by the Arizona courts in a manner that furnishes sufficient guidance to the sentencer. This being so, proportionality review is not constitutionally required, and we 'lawfully may presume that [Walton's] death sentence was not "wantonly and freakishly" imposed—and thus that the sentence is not disproportionate within any recognized meaning of the Eighth Amendment.' *McCleskey* v. *Kemp*, 481 U. S. 279, 306, 308 (1987); *Pulley* v. *Harris*, 465 U. S. 37, 43 (1984). Furthermore, the Arizona Supreme Court plainly undertook its proportionality review in good faith and found that Walton's sentence was proportional to the sentences imposed in cases similar to his. The Constitution does not require us to look behind that conclusion." *Ante*, at 655–656.

Our decision in *Walton* thus makes clear that if a State has adopted a constitutionally narrow construction of a facially vague aggravating circumstance, and if the State has applied that construction to the facts of the particular case, then the "fundamental constitutional requirement" of "channeling and limiting . . . the sentencer's discretion in imposing the death penalty," *Cartwright*, 486 U. S., at 362, has been satisfied. Apart from its analysis of Arizona's subsection (F)(6) cases to determine whether the aggravating circumstance was facially valid—*i. e.*, whether the Arizona courts had given a sufficiently narrow limiting construction to the circumstance—the Court of Appeals in this case therefore erred in conducting a *de novo*, case-by-case comparison of the facts of those cases with the facts of the instant case. See *McCleskey* v. *Kemp*, 481 U. S. 279, 306–307 (1987) ("[A]bsent a showing that the Georgia capital punishment system operates in an arbitrary and capricious manner, McCleskey cannot prove a constitutional violation by demonstrating that

other defendants who may be similarly situated did *not* receive the death penalty").

## C

In light of our rejection of respondent's constitutional challenge to Arizona's "especially heinous . . . or depraved" aggravating circumstance, see *Walton*, respondent's contention—that the Arizona Supreme Court's application of its narrowing construction to the facts of his case nevertheless failed to distinguish his case from cases in which the court did not find the aggravating circumstance—reduces, in essence, to a claim that the state court simply misapplied its own aggravating circumstance to the facts of his case. Because federal habeas corpus relief does not lie for errors of state law, see, *e. g.*, *Pulley* v. *Harris*, 465 U. S. 37, 41 (1984); *Rose* v. *Hodges*, 423 U. S. 19, 21–22 (1975) *(per curiam)*, federal habeas review of a state court's application of a constitutionally narrowed aggravating circumstance is limited, at most, to determining whether the state court's finding was so arbitrary or capricious as to constitute an independent due process or Eighth Amendment violation. Cf. *Donnelly* v. *DeChristoforo*, 416 U. S. 637, 642, 643 (1974) (absent a specific constitutional violation, federal habeas review of trial error is limited to whether the error "so infected the trial with unfairness as to make the resulting conviction a denial of due process").

In making such a determination, respect for a state court's findings of fact and application of its own law counsels against the sort of *de novo* review undertaken by the Court of Appeals in this case. Cf. 832 F. 2d, at 484 ("Illumined . . . by the case examples furnished by the Arizona Supreme Court, [the "especially heinous . . . or depraved" standard] seems to call for conduct or attitudes more shocking than those exhibited by Jeffers"). Where the issue is solely whether a state court has properly found the existence of a constitutionally narrowed aggravating circumstance, we have never required federal courts "to peer majestically over the [state] court's shoulder so that [they] might second-guess

its interpretation of facts that quite reasonably—perhaps even quite plainly—fit within the statutory language." *Godfrey*, 446 U. S., at 450 (WHITE, J., dissenting) (footnote omitted). See *Barclay*, 463 U. S., at 947 (plurality opinion) (review of state court findings of aggravating circumstances is "limited to the question whether they are so unprincipled or arbitrary as to somehow violate the United States Constitution"); *id.*, at 968 (STEVENS, J., concurring in judgment) ("It is not our role to reexamine the trial court's findings of fact, which have been affirmed by the Florida Supreme Court. Assuming those facts to be true, there is no federal constitutional infirmity in these two findings of statutory aggravating circumstances").

Rather, in determining whether a state court's application of its constitutionally adequate aggravating circumstance was so erroneous as to raise an independent due process or Eighth Amendment violation, we think the more appropriate standard of review is the "rational factfinder" standard established in *Jackson* v. *Virginia*, 443 U. S. 307 (1979). We held in *Jackson* that where a federal habeas corpus claimant alleges that his state conviction is unsupported by the evidence, federal courts must determine whether the conviction was obtained in violation of *In re Winship*, 397 U. S. 358 (1970), by asking "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." 443 U. S., at 319 (citation omitted); see also *id.*, at 324 ("We hold that in a challenge to a state criminal conviction brought under 28 U. S. C. § 2254— if the settled procedural prerequisites for such a claim have otherwise been satisfied—the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt") (footnote omitted). The Court reasoned:

"This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution." *Id.*, at 319 (footnote omitted).

These considerations apply with equal force to federal habeas review of a state court's finding of aggravating circumstances. Although aggravating circumstances are not "elements" of any offense, see *Walton, ante,* at 648–649, the standard of federal review for determining whether a state court has violated the Fourteenth Amendment's guarantee against wholly arbitrary deprivations of liberty is equally applicable in safeguarding the Eighth Amendment's bedrock guarantee against the arbitrary or capricious imposition of the death penalty. Like findings of fact, state court findings of aggravating circumstances often require a sentencer to "resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson, supra,* at 319. See Ariz. Rev. Stat. Ann. § 13–703(F) (1989) (listing aggravating circumstances); cf. 28 U. S. C. § 2254(d) (federal courts in habeas corpus proceedings must generally accord a presumption of correctness to a state court's factual findings). The Arizona Supreme Court's narrowing construction of the subsection (F)(6) aggravating circumstance, for example, requires Arizona courts to determine whether the victim suffered physical pain or mental distress and to assess the mental state and attitude of the perpetrator as reflected by his words and actions. See, *e. g., State* v. *Carriger,* 143 Ariz. 142, 160, 692 P. 2d 991, 1009 (1984) (discussing narrowing construction of "'cruel[ty]'" and "'heinous and depraved'"), cert. denied, 471 U. S. 1111 (1985). Even if a determination under Arizona's

narrowing construction could be characterized as a "mixed" question of law and fact, cf. *Sumner* v. *Mata*, 455 U. S. 591, 597 (1982) *(per curiam)* (declining to apply § 2254(d)'s presumption of correctness to mixed questions of law and fact), any such determination would nevertheless remain a question of state law, errors of which are not cognizable in federal habeas proceedings.

Moreover, a federal court should adhere to the *Jackson* standard even when reviewing the decision of a state appellate court that has independently reviewed the evidence, for the underlying question remains the same: If a State's aggravating circumstances adequately perform their constitutional function, then a state court's application of those circumstances raises, apart from due process and Eighth Amendment concerns, only a question of the proper application of state law. A state court's finding of an aggravating circumstance in a particular case—including a *de novo* finding by an appellate court that a particular offense is "especially heinous . . . or depraved"—is arbitrary or capricious if and only if no reasonable sentencer could have so concluded. Indeed, respondent agrees that "a state court's 'especially heinous . . . or depraved' finding, *insofar as it is a matter of state law,* is reviewable by the federal courts only under the 'rational factfinder' rule of *Jackson* v. *Virginia.*" Brief for Respondent 95–96 (emphasis added; footnote omitted).

Applying the *Jackson* standard in this case, we hold that a rational factfinder could have found that respondent both relished the crime and inflicted gratuitous violence on the victim. Given the evidence that "while Jeffers was beating the [dead] victim he called her 'a bitch and a dirty snitch' and with each striking blow said, 'This one is for so and so. [naming several names],'" *State* v. *Jeffers*, 135 Ariz., at 430, 661 P. 2d, at 1131, we think that the Arizona Supreme Court's finding that respondent had relished the killing is one that a rational factfinder could have made. Moreover, the Arizona Supreme Court's finding that respondent had inflicted gratu-

itous violence is rationally supported by the evidence that respondent "climbed on top of the dead victim and hit her in the face several times which eventually resulted in additional wounds and bleeding," *ibid.* In light of the Arizona Supreme Court's narrowing construction of the "especially heinous . . . or depraved" aggravating circumstance, see *State* v. *Gretzler*, 135 Ariz., at 52–53, 659 P. 2d, at 11–12 (listing factors), the Arizona Supreme Court could reasonably have concluded that respondent committed the murder in an "especially heinous . . . or depraved manner."

For the foregoing reasons, we reverse the judgment of the Court of Appeals and remand for proceedings consistent with this opinion.

*It is so ordered.*

[For dissenting opinion of JUSTICE BRENNAN, see *ante*, p. 674.]

JUSTICE BLACKMUN, with whom JUSTICE BRENNAN, JUSTICE MARSHALL, and JUSTICE STEVENS join, dissenting.

Seeking habeas corpus relief in the United States Court of Appeals for the Ninth Circuit, respondent Jimmie Wayne Jeffers raised two challenges to Arizona's "especially heinous . . . or depraved" aggravating circumstance. Ariz. Rev. Stat. Ann. § 13–703(F)(6) (1989) ((F)(6) circumstance or factor).[1] First, Jeffers contended that the Arizona Supreme

---

[1] The (F)(6) circumstance applies when the sentencer finds that "[t]he defendant committed the offense in an especially heinous, cruel or depraved manner." In the present case, the Arizona Supreme Court found that cruelty had not been proved because "[t]here was no evidence that the victim suffered any pain." *State* v. *Jeffers*, 135 Ariz. 404, 429, 661 P. 2d 1105, 1130 (1983). The court did find that the murder was "heinous" and "depraved," and the adequacy of that finding is the issue in this case. The Arizona Supreme Court disagreed with the trial court's determination that Jeffers had "knowingly created a grave risk of death to another person or persons in addition to the victim of the offense," Ariz. Rev. Stat. Ann. § 13–703(F)(3) (1989). See 135 Ariz., at 428–429, 661 P. 2d, at 1129–1130. Consequently, Jeffers' sentence of death rests entirely on the (F)(6) factor.

Court has failed to articulate a constitutionally sufficient limiting construction of the (F)(6) circumstance. In the alternative, Jeffers argued that, even if a suitable limiting construction had been developed, its application to *his* case failed to satisfy constitutional requirements. The Court of Appeals, deeming itself bound by Circuit precedent, rejected respondent's first contention. *Jeffers* v. *Ricketts*, 832 F. 2d 476, 482 (1987), citing *Chaney* v. *Lewis*, 801 F. 2d 1191, 1194–1196 (CA9 1986), cert. denied, 481 U. S. 1023 (1987). With respect to the second contention, however, the court concluded that the standard enunciated by the Arizona Supreme Court "seems to call for conduct or attitudes more shocking than those exhibited by Jeffers," 832 F. 2d, at 484, and that "[b]ecause we conclude that the standard of heinousness and depravity delineated in prior Arizona cases cannot be applied in a principled manner to Jeffers, his death sentence must be struck down as arbitrary." *Id.*, at 485.

The State then filed a petition for rehearing and rehearing en banc. The panel indicated that its ruling on the rehearing petition would be deferred "'pending further decision of this court, sitting *en banc*, in *Adamson* v. *Ricketts.*'" Order of March 30, 1988, quoted in Brief for Respondent 21. Several months later the en banc court issued its decision in *Adamson* v. *Ricketts*, 865 F. 2d 1011 (CA9 1988), cert. pending, No. 88–1553. After exhaustive analysis of the relevant Arizona precedents, the en banc court concluded:

> "[T]he (F)(6) circumstance has not been given a sufficiently narrow construction by the Arizona Supreme Court such that its application will be kept within identifiable boundaries. Among the more than fifty cases in which an (F)(6) finding was appealed, we are unable to distinguish rationally those cases in which the Arizona Supreme Court upheld the finding from the few in which it did not. Because neither the legislative standard nor the case law has properly channeled decisionmaking on the imposition of the 'especially heinous, cruel or de-

praved' aggravating circumstance, we find that this circumstance has been arbitrarily and capriciously applied by the Arizona courts." *Id.*, at 1038.[2]

The Court of Appeals subsequently denied the State's request for rehearing in Jeffers' case.

As respondent in this Court, Jeffers defends the judgment of the Court of Appeals on the grounds that no satisfactory limiting construction of the (F)(6) circumstance can be derived from the Arizona precedents, and, alternatively, that if such a construction does exist, it was improperly applied in his case.[3] Jeffers' first claim is logically antecedent to the second; it raises an issue of greater general importance, and, given the decision of the en banc Court of Appeals in *Adamson*, it can hardly be regarded as insubstantial. The Court today, however, simply refuses to discuss the merits of respondent's broad challenge to the (F)(6) circumstance; in lieu of analysis, it relies on a single sentence of dictum in an opin-

---

[2] Eleven judges sat on the en banc panel in *Adamson*. Seven judges concluded that none of the three terms ("heinous," "cruel," or "depraved") in the (F)(6) circumstance had been construed by the Arizona Supreme Court in a manner that satisfied constitutional requirements. 865 F. 2d, at 1036. The other four judges argued that the state court had announced a satisfactory construction of the word "cruel"; these four declined to express a view as to the adequacy of the Arizona Supreme Court's application of the terms "heinous" and "depraved." *Id.*, at 1058 (opinion concurring and dissenting).

[3] Petitioner contends that Jeffers is not entitled to argue in this Court that the Arizona Supreme Court has failed to articulate a constitutionally sufficient limiting construction of the (F)(6) circumstance. Petitioner argues that the point has been waived, since the Ninth Circuit panel ruled against respondent on this claim and Jeffers did not seek rehearing or cross-petition for certiorari. Reply Brief for Petitioner 4. The majority correctly (though silently) rejects this proposition. There is no basis for the suggestion that respondent should have sought rehearing at the Court of Appeals, or filed a cross-petition here, after he prevailed below. It is well established that respondent may defend the judgment of the Court of Appeals on any ground supported by the record. See, *e. g., Smith* v. *Phillips*, 455 U. S. 209, 215, n. 6 (1982).

ion in another case issued today. Because I believe that Arizona's application of the (F)(6) factor cannot be squared with this Court's governing precedents—and because I regard the majority's approach as a parody of constitutional adjudication—I dissent.

## I

This Court consistently has recognized that "an aggravating circumstance must genuinely narrow the class of persons eligible for the death penalty and must reasonably justify the imposition of a more severe sentence on the defendant compared to others found guilty of murder." *Zant* v. *Stephens*, 462 U. S. 862, 877 (1983). The application to respondent of Arizona's (F)(6) circumstance can be sustained only if that aggravating factor provides a "principled way to distinguish this case, in which the death penalty was imposed, from the many cases in which it was not." *Godfrey* v. *Georgia*, 446 U. S. 420, 433 (1980) (plurality opinion). The majority does not contend that the statutory language, which requires only that the murder be "especially heinous . . . or depraved," is itself sufficiently precise to meet constitutional standards.[4] Rather, the Court refers repeatedly to a "narrowing construction" of the (F)(6) circumstance announced by the Arizona Supreme Court. See, *e. g.*, *ante*, at 776, 780, 783,

---

[4] No such contention would be plausible. In *Godfrey* the plurality, considering Georgia's "outrageously or wantonly vile, horrible or inhuman" aggravating circumstance, concluded that "[t]here is nothing in these few words, standing alone, that implies any inherent restraint on the arbitrary and capricious infliction of the death sentence. A person of ordinary sensibility could fairly characterize almost every murder as 'outrageously or wantonly vile, horrible and inhuman.'" 446 U. S., at 428–429. In *Maynard* v. *Cartwright*, 486 U. S. 356 (1988), the Court considered Oklahoma's "especially heinous, atrocious, or cruel" aggravating factor. It unanimously concluded: "[T]he language of the Oklahoma aggravating circumstance at issue . . . gave no more guidance than the 'outrageously or wantonly vile, horrible or inhuman' language that the jury returned in its verdict in *Godfrey*." *Id.*, at 363–364. The statutory language here is no more precise.

and 784. The Court nowhere states precisely what that narrowing construction is, nor does it examine other Arizona cases to see whether that construction has been consistently applied. The majority suggests, however, that the "narrowing construction" was announced by the Arizona Supreme Court in *State* v. *Gretzler*, 135 Ariz. 42, 659 P. 2d 1, cert. denied, 461 U. S. 971 (1983). See *ante*, at 784. Analysis of the Arizona Supreme Court's opinion in *Gretzler*, and of its relationship to prior Arizona capital cases, belies that characterization.

Prior to *Gretzler*, the Arizona Supreme Court's application of the (F)(6) circumstance was based principally on its decision in *State* v. *Knapp*, 114 Ariz. 531, 562 P. 2d 704 (1977), cert. denied, 435 U. S. 908 (1978), in which the court recited dictionary definitions of each of the statutory terms. "Heinous" was defined as "hatefully or shockingly evil; grossly bad"; "cruel" was defined as "disposed to inflict pain esp. in a wanton, insensate or vindictive manner: sadistic"; and "depraved" was defined as "marked by debasement, corruption, perversion or deterioration." 114 Ariz., at 543, 562 P. 2d, at 716. The court concluded: "What our legislature intended to include as an aggravating circumstance was a killing wherein additional circumstances of the nature enumerated above set the crime apart from the usual or the norm." *Ibid.*

The *Gretzler* court did not suggest that the *Knapp* definitions were insufficient to guide the sentencer's discretion or that further narrowing was required. To the contrary, the court quoted these definitions with approval and stated: "We believe that the statutory phrase 'especially heinous, cruel, or depraved' has been construed in a constitutionally narrow fashion, and has been properly applied in individual cases. A summary of the law which has been developing in the area supports this conclusion." 135 Ariz., at 50, 659 P. 2d, at 9. In explaining what kinds of murders properly would be regarded as "especially heinous . . . or depraved," the court

stated that "[i]n contrast to the emphasis upon the victim's suffering and feelings in the case of cruelty, the statutory concepts of heinous and depraved involve a killer's vile state of mind at the time of the murder, as evidenced by the killer's actions. Our cases have suggested specific factors which lead to a finding of heinousness or depravity." *Id.*, at 51, 659 P. 2d, at 10. Next, drawing on examples from prior Arizona cases, the court identified five factors the presence of which would indicate that a particular killing was "especially heinous . . . or depraved." These factors were (1) "the apparent relishing of the murder by the killer," (2) "the infliction of gratuitous violence on the victim," (3) "the needless mutilation of the victim," (4) "the senselessness of the crime," and (5) "the helplessness of the victim." *Id.*, at 52, 659 P. 2d, at 11. Finally, the court noted: "[W]here no circumstances, *such as the specific factors discussed above,* separate the crime from the 'norm' of first degree murders, we will reverse a finding that the crime was committed in an 'especially heinous, cruel, or depraved manner.'" *Id.*, at 53, 659 P. 2d, at 12 (emphasis added).

The Arizona Supreme Court's opinion in *Gretzler* obviously did *not* announce a "narrowing construction" of the (F)(6) circumstance. The court did not suggest that the standards previously applied were inadequate, or that further constraints on the sentencer's discretion were essential. Instead, the Arizona Supreme Court cited the *Knapp* definitions with approval and then gave *examples* of their application. No matter how vaguely defined an aggravating circumstance is, there will be a finite number of cases in which that circumstance has been applied. It hardly limits the application of that aggravating factor to list those prior decisions, or to provide illustrative examples from among them. I do not see how the Arizona Supreme Court's *description* of the manner in which a vague aggravating factor has been applied can be regarded as the establishment of a constitutionally sufficient narrowing construction.

Nor did the *Gretzler* court narrow the discretion of future sentencers simply by grouping its prior decisions into categories. The use of categories could serve to guide the sentencer *if* (a) the categories themselves are narrow enough that a significant number of homicides will not fall within any of them, and (b) the court indicates that a murder is covered by the aggravating circumstance *only* if it falls within one of the enumerated categories. The Arizona Supreme Court's decision in *Gretzler* satisfies neither of these criteria. Most first-degree murders will fall within at least one of the five categories listed in *Gretzler*—hardly a surprising result, since the *Gretzler* categories were simply descriptive of the prior period during which the *Knapp* definitions had governed the application of this aggravating factor. Since *Gretzler*, moreover, the Arizona Supreme Court has continued to identify additional circumstances that will support the conclusion that a particular murder is "especially heinous . . . or depraved." That fact is also unsurprising. The court in *Gretzler* did not purport to lay down rules for the future; it simply summarized prior case law and indicated that an (F)(6) finding would be proper when "circumstances, *such as the specific factors discussed above*, separate the crime from the 'norm' of first degree murders." 135 Ariz., at 53, 659 P. 2d, at 12 (emphasis added).

The majority does not contend that the *Knapp* definitions furnished constitutionally sufficient guidance to capital sentencers in Arizona prior to *Gretzler*. Just as a reasonable sentencer might conclude that every first-degree murder is "especially heinous, cruel or depraved," see n. 4, *supra*, a reasonable judge could surely believe that all such killings are "hatefully or shockingly evil" or "marked by debasement, corruption, perversion or deterioration."[5] Yet the majority

---

[5] In 1980, when respondent was sentenced to death by the trial judge, the Arizona Supreme Court had provided no guidance in the application of the (F)(6) circumstance beyond the definitions quoted in *State* v. *Knapp*, 114 Ariz. 531, 562 P. 2d 704 (1977). Respondent's trial-level sentencing

apparently concludes that the Arizona Supreme Court cured the constitutional infirmity by summarizing its prior decisions, reiterating with approval the constitutionally deficient construction relied on previously and pledging to follow the same approach in the future.[6]

The majority undertakes no close examination of *Gretzler* or of other Arizona cases, prior or subsequent. It makes no attempt to explain how the Arizona Supreme Court's construction of the terms "especially heinous . . . or depraved" can be said to satisfy the constitutional requirements announced in this Court's prior decisions. Indeed, the majority's conclusion that the Arizona court has satisfactorily limited the reach of the statutory language is supported by no analysis at all. The Court instead relies on the assertion that "we resolved any doubt about the matter in *Walton* v. *Arizona, ante,* p. 639, where we upheld, against a vagueness challenge, the precise aggravating circumstance at issue in this case." *Ante,* at 777.[7] The majority's claim that *Wal-*

procedure was therefore conducted under an invalid scheme, and I would affirm the judgment below on that ground even if I believed that the Arizona Supreme Court had subsequently announced a valid limiting construction of this aggravating factor. See *Clemons* v. *Mississippi,* 494 U. S. 738, 762–772 (1990) (dissenting opinion).

[6] In describing the kinds of murders that will qualify as "especially heinous . . . or depraved," the Arizona Supreme Court has continued to employ the formulations relied upon in *Knapp.* See, *e. g., State* v. *Fulminante,* 161 Ariz. 237, 254–255, 778 P. 2d 602, 619–620 (1988) (quoting *Knapp* definitions), cert. granted, 494 U. S. 1055 (1990); *State* v. *Beaty,* 158 Ariz. 232, 242, 762 P. 2d 519, 529 (1988) (same), cert. denied, 491 U. S. 910 (1989); *State* v. *Poland,* 144 Ariz. 388, 405, 698 P. 2d 183, 200 (1985) (same); *State* v. *Johnson,* 147 Ariz. 395, 401, 710 P. 2d 1050, 1056 (1985) ((F)(6) finding is appropriate in cases where the killer "acted in such a fashion that his acts set him apart from the 'norm' of first degree murderers").

[7] The majority also places peculiar emphasis on the Court of Appeals' conclusion that the (F)(6) aggravating factor, as construed by the Arizona Supreme Court, is not unconstitutionally vague. See *ante,* at 776–777. It is most unusual for this Court to show deference to the legal conclusion of a Court of Appeals, particularly a conclusion made in the decision under review. And it is simply perverse for this Court to rely upon a Court of

*ton* involves "the precise aggravating circumstance at issue in this case," however, fundamentally misrepresents the operation of the Arizona statute.

The Arizona Supreme Court consistently has asserted that the terms "heinous," "cruel," and "depraved" "are considered disjunctive; the presence of any one of three factors is an aggravating circumstance." *State* v. *Beaty*, 158 Ariz. 232, 242, 762 P. 2d 519, 529 (1988), cert. denied, 491 U. S. 910 (1989). It is therefore more accurate to characterize the (F)(6) circumstance as three aggravating factors than as one.[8] In *Walton*, the Arizona Supreme Court, in determining that the (F)(6) factor had been established, relied primarily on the conclusion that the murder was especially cruel. Although the court also indicated that the murder was especially depraved, it stated clearly that this conclusion was not necessary to its finding of the (F)(6) circumstance. See *State* v. *Walton*, 159 Ariz. 571, 587–588, 769 P. 2d 1017, 1033–1034 (1989) ("The clear evidence of cruelty is sufficient to sustain the trial judge's finding of that aggravating factor, but we believe that the evidence also supports the finding of depravity"). In affirming Jeffrey Walton's death sentence today, this Court also focuses its attention on the constitutional sufficiency of the Arizona Supreme Court's construction of "cruelty." The Court concludes:

---

Appeals decision for a proposition that is no longer good law within the Circuit. The majority inexplicably neglects to mention that the panel's conclusion on this point has been superseded by the decision of the en banc court in *Adamson* v. *Ricketts*, 865 F. 2d 1011 (CA9 1988), in which all seven judges who expressed a view on the question concluded that the Arizona Supreme Court had failed to articulate a constitutionally sufficient narrowing construction of the terms "heinous" and "depraved."

[8] It might be even more accurate to say that the (F)(6) aggravating circumstance includes two distinct concepts: (1) cruelty and (2) heinousness/depravity. The Arizona Supreme Court has made only the most superficial effort to explain the difference between a murder that is "heinous" and a murder that is "depraved." See *Adamson* v. *Ricketts*, 865 F. 2d, at 1034–1035, n. 38.

"Recognizing that the proper degree of definition of an aggravating factor of this nature is not susceptible of mathematical precision, we conclude that the definition given to the 'especially cruel' provision by the Arizona Supreme Court is constitutionally sufficient because it gives meaningful guidance to the sentencer. *Nor can we fault the state court's statement that a crime is committed in an especially 'depraved' manner when the perpetrator 'relishes the murder, evidencing debasement or perversion,' or 'shows an indifference to the suffering of the victim and evidences a sense of pleasure' in the killing.*" *Ante,* at 655 (emphasis added).

In the present case, however, the adequacy of the Arizona Supreme Court's construction of "cruelty" is not at issue. That court expressly found that Jeffers' crime was *not* "especially cruel"; its affirmance of the death sentence was based entirely on the conclusion that this murder was especially "heinous" and "depraved." In stating that Arizona has placed constitutionally sufficient limits on the State's "especially heinous . . . or depraved" aggravating factor, today's majority therefore is not in a position to rely, and cannot rely, on either the holding or the analysis of *Walton.* Rather, the majority relies *entirely* on the italicized sentence quoted above—the *only* sentence in the *Walton* opinion that discusses the Arizona Supreme Court's construction of the word "depraved." That sentence is wholly gratuitous: The Arizona Supreme Court's holding in *Walton,* and this Court's affirmance, do not depend upon a determination that Walton's crime was "especially . . . depraved." The opinion in *Walton,* moreover, makes no effort whatsoever to justify its suggestion that the state court's construction of "depravity" is sufficient to meet constitutional standards.

I think it is important that we be frank about what is happening here. The death penalty laws of many States establish aggravating circumstances similar to the one at issue in

this case.[9]  Since the statutory language defining these factors does not provide constitutionally adequate guidance, the constitutionality of the aggravating circumstances necessarily depends on the construction given by the State's highest court.  We have expressed apparent approval of a limiting construction requiring "torture or serious physical abuse." *Maynard* v. *Cartwright*, 486 U. S. 356, 365 (1988).  This Court has not held that this is the only permissible construction of an aggravating circumstance of this kind, but prior to today we have never suggested that the aggravating factor can permissibly be construed in a manner that does not make reference to the suffering of the victim.  The decision today will likely result in the execution of numerous inmates, in Arizona[10] and elsewhere, who would not otherwise be put

---

[9] One commentator has stated: "Twenty-four states permit imposition of the death penalty based on a finding that the murder was, in some ill-defined way, worse than other murders.  The states use a variety of terms to denote this aggravating circumstance, with most statutes containing, either alone or in some combination, the terms 'especially heinous, atrocious, or cruel,' 'depravity of mind,' or 'outrageously vile wanton or inhuman.'  These aggravating circumstances . . . have generated more controversy than any other aggravating circumstance.  Commentators have universally criticized them as vague, overbroad, and meaningless." Rosen, The "Especially Heinous" Aggravating Circumstance in Capital Cases—The Standardless Standard, 64 N. C. L. Rev. 941, 943–944 (1986) (footnotes omitted).

[10] In addition to the present case, on at least 12 occasions the Arizona Supreme Court has found that a particular murder was especially heinous and/or depraved but not especially cruel.  See *State* v. *Ceja*, 126 Ariz. 35, 39–40, 612 P. 2d 491, 495–496 (1980); *State* v. *Clark*, 126 Ariz. 428, 436–437, 616 P. 2d 888, 896–897, cert. denied, 449 U. S. 1067 (1980); *State* v. *Bishop*, 127 Ariz. 531, 534, 622 P. 2d 478, 481 (1980); *State* v. *Tison*, 129 Ariz. 546, 555, 633 P. 2d 355, 364 (1981), cert. denied, 459 U. S. 882 (1982); *State* v. *Ortiz*, 131 Ariz. 195, 210, 639 P. 2d 1020, 1035 (1981), cert. denied, 456 U. S. 984 (1982); *State* v. *Woratzeck*, 134 Ariz. 452, 457, 657 P. 2d 865, 870 (1982); *State* v. *Zaragoza*, 135 Ariz. 63, 69, 659 P. 2d 22, 28, cert. denied, 462 U. S. 1124 (1983); *State* v. *Harding*, 137 Ariz. 278, 294, 670 P. 2d 383, 399 (1983), cert. denied, 465 U. S. 1013 (1984); *State* v. *Fisher*, 141 Ariz. 227, 252, 686 P. 2d 750, 775, cert. denied, 469 U. S. 1066 (1984); *State*

to death. Yet neither in this case nor in *Walton* has the Court articulated any argument in support of its decision. Nor has the majority undertaken any examination of the way in which this aggravating circumstance has been applied by the Arizona Supreme Court. Instead, the Court relies on a conspicuous bootstrap. Five Members have joined the majority opinion in *Walton*, which in a single sentence asserts without explanation that the majority cannot "fault" the Arizona Supreme Court's construction of the statutory term "depraved." In the present case the same five Members proclaim themselves to be bound by this scrap of dictum. In any context this would be a poor excuse for constitutional adjudication. In a capital case it is deeply disturbing.

It is to some degree understandable that the majority chooses to rely exclusively on the brief and passing dictum in *Walton*. Had the Court examined the range of homicides which the Arizona Supreme Court has held to be "especially heinous . . . or depraved," it could not plausibly have argued that the state court has placed meaningful limits on the application of this aggravating circumstance. My dissent in *Walton* explains in some detail the reasons for its conclusion that this aggravating factor, as defined by the Arizona Supreme Court, fails to satisfy constitutional requirements. The United States Court of Appeals for the Ninth Circuit, sitting en banc, after exhaustive analysis of the relevant state precedents, also concluded that the "especially heinous . . . or depraved" circumstance is unconstitutionally vague. See *Adamson* v. *Ricketts*, 865 F. 2d, at 1031–1039. There is no need to reiterate these arguments here. It is sufficient to

---

v. *Villafuerte*, 142 Ariz. 323, 331, 690 P. 2d 42, 50 (1984), cert. denied, 469 U. S. 1230 (1985); *State* v. *Martinez-Villareal*, 145 Ariz. 441, 450–451, 702 P. 2d 670, 679–680, cert. denied, 474 U. S. 975 (1985); *State* v. *Wallace*, 151 Ariz. 362, 367–368, 728 P. 2d 232, 237–238 (1986), cert. denied, 483 U. S. 1011 (1987). In four cases besides the present one, that has been the only aggravating circumstance. See *State* v. *Ceja*, *supra*; *State* v. *Bishop*, *supra*; *State* v. *Villafuerte*, *supra*; *State* v. *Wallace*, *supra*.

note that neither this Court nor the Arizona Supreme Court has attempted to refute that analysis.

Indeed, the constitutional defects in the Arizona Supreme Court's application of the (F)(6) circumstance are illustrated by the state court's conclusion that respondent "relished" the murder, and that this factor supports a finding that the killing was "especially heinous . . . or depraved." The court based its conclusion on testimony indicating that respondent struck the victim several times after she appeared to be dead, that while striking her he called her a "bitch" and a "dirty snitch," and that with each striking blow he said, "This one is for ——," naming several of his friends on whom the victim had informed to the police. 135 Ariz., at 430, 661 P. 2d, at 1131. The Arizona Supreme Court did not explain precisely what it meant by saying that the respondent "relished" his crime. But the evidence does not suggest that Jeffers killed for the sake of killing or found some intrinsic pleasure in the act of murder. Rather, the evidence indicates that respondent killed out of hatred for a particular individual and a desire for revenge. There is a difference.

It may be that a State could rationally conclude that a murder committed out of personal hatred is more reprehensible than is a killing committed for other reasons.[11] But the State of Arizona cannot be said to have arrived at any such conclusion. The Arizona Supreme Court has also held that a murder is "especially heinous . . . or depraved" if it is committed to eliminate a witness, see *State* v. *Correll*, 148 Ariz. 468, 481, 715 P. 2d 721, 734 (1986); *State* v. *Gillies*, 142 Ariz. 564, 570, 691 P. 2d 655, 661 (1984), cert. denied, 470 U. S.

---

[11] The identification of particularly blameworthy motives for murder would seem, however, to be more appropriately a task for the legislature than for the State's judiciary. See Rosen, 64 N. C. L. Rev., at 990–991. The codification of an aggravating factor as vaguely defined as the (F)(6) circumstance is in essence an act of legislative abdication, since it requires the state courts to make fundamental policy choices under the guise of "interpreting" the statute.

1059 (1985); *State* v. *Smith,* 141 Ariz. 510, 511–512, 687 P. 2d 1265, 1266–1267 (1984), or if it is "senseless," see *Gretzler,* 135 Ariz., at 52, 659 P. 2d, at 11–12; and the statute itself provides that it shall be an aggravating circumstance if the murder is committed for pecuniary gain. See Ariz. Rev. Stat. Ann. § 13–703(F)(5) (1989).[12] The Arizona Supreme Court has also identified other blameworthy motives which, in the court's view, suggest that a murder is "especially heinous . . . or depraved."[13] Taken together, the decisions of the Arizona Supreme Court hold that a murder will be deemed *especially* blameworthy if it is committed for virtually any reason, or for no reason at all.

The Arizona Supreme Court's decisions dealing with especially improper motives are symptomatic of a larger pattern in that court's construction of the (F)(6) circumstance. At least since *Gretzler,* the court has generally avoided the error of simply recounting the events surrounding a particular crime and then announcing, in conclusory fashion, that the murder was "especially heinous . . . or depraved." Rather, the court typically identifies specific factors to support its conclusion that the aggravating circumstance has been established. And if any one decision is examined in isolation, it may appear that the state court has narrowly construed the (F)(6) circumstance in a manner that satisfies constitutional requirements. The problem is that the Arizona

---

[12] The Arizona Supreme Court has construed this aggravating factor as applying whenever "the expectation of financial gain was a cause of the murders." *State* v. *Clark,* 126 Ariz., at 436, 616 P. 2d, at 896. The court in *Clark* rejected the specially concurring justice's position, *id.,* at 437, 616 P. 2d, at 897, that this aggravating circumstance applied only to murders committed by hired killers.

[13] See *State* v. *Martinez-Villareal,* 145 Ariz., at 451, 702 P. 2d, at 680 (murder to demonstrate "manliness" reflects "a manifest disregard for the fundamental principles upon which our society is based"); *State* v. *McCall,* 139 Ariz. 147, 162, 677 P. 2d 920, 935 (1983) ((F)(6) finding supported in part by the fact that the mutilation of the victims' bodies "was designed to be a 'message' to warn other people"), cert. denied, 467 U. S. 1220 (1984).

Supreme Court has identified so many such factors, and has shown itself so willing to add new factors when a perceived need arises, that the body of its precedents places no meaningful limitations on the application of this aggravating circumstance.[14] The constitutional infirmity of the court's approach cannot be recognized through examination of any one opinion. It becomes very apparent upon examination of the relevant decisions taken as a whole. Unfortunately, the inquiry required for an informed assessment of the Arizona Supreme Court's application of this aggravating factor is one that this Court simply refuses to undertake.

## II

The majority devotes most of its energy arguing that a federal habeas court, having concluded that a State has adopted

---

[14] A State might reasonably conclude that a murder is *especially* reprehensible if the victim is 10 years old (because a child is physically vulnerable and has most of his life ahead of him); or 75 years old (because of the respect traditionally accorded to the elderly); or 40 years old (because a person of that age is likely to have others dependent upon him for support). A cogent argument could also be made that the killing of a 21- or 55-year-old victim is especially blameworthy. But while none of these choices would be unreasonable, the State, with a statute of this kind, must choose. If the state court invoked first one argument and then the other, and ultimately found in virtually every case that the age of the victim made the murder "especially heinous . . . or depraved," the aggravating circumstance would be too broad.

Under the approach developed by the majority here and in *Walton*, however, the Arizona Supreme Court with impunity could apply its aggravating circumstance in just such a fashion. If the state court held that the youth of the victim made a particular murder "especially heinous . . . or depraved," this Court presumably would assert that such a construction narrowed the application of the aggravating factor in a manner that satisfied constitutional standards. And if the defendant cited decisions in which the same state court had held that other murders were "especially heinous . . . or depraved" because the victim was 21, 40, 55, or 75 years old, this Court apparently would refuse to read the cases on the ground that the defendant was not entitled to " 'challeng[e] the proportionality review of the Arizona Supreme Court.' " See *ante*, at 778 (quoting *Walton*, *ante*, at 655).

a constitutionally sufficient limiting construction of an aggravating circumstance, largely should refrain from engaging in case-specific comparisons between the homicide under review and prior decisions in which the aggravating factor has been found. The Court concludes that since a rational factfinder could have determined that respondent "relished" the murder and engaged in "gratuitous violence," the death sentence must be allowed to stand. I concede that respondent's crime was not plainly distinguishable from the other murders that the Arizona Supreme Court has found to be "especially heinous . . . or depraved." Indeed, my conclusion could hardly be otherwise: having argued that the (F)(6) circumstance has been construed so broadly as to cover virtually every first-degree murder, I could scarcely contend that the court's finding in *this* case was bizarre or aberrational. I, however, do have some brief observations concerning the role of federal habeas courts in reviewing state-court findings of aggravating circumstances.

(1) I think that the majority is wrong in arguing that a state court's application of a valid aggravating circumstance involves a question of state law only. See *ante*, at 780. The statutory aggravating circumstances do perform the state-law function of determining who will be sentenced to death. But the aggravating factors also perform the distinct function of determining which murderers are *eligible* for the death penalty as a matter of federal law. See *Zant* v. *Stephens*, 462 U. S., at 878 ("[S]tatutory aggravating circumstances play a constitutionally necessary function at the stage of legislative definition: they circumscribe the class of persons eligible for the death penalty"); *Lowenfield* v. *Phelps*, 484 U. S. 231, 244 (1988). That point is particularly clear in cases like the present one, where the (F)(6) circumstance is the *only* aggravating factor that the Arizona Supreme Court found to exist. If the state court erred in its determination that this aggravating circumstance had been proved, that error is of federal constitutional significance: The defendant who claims

that no aggravating factor has been established is contending that the Eighth Amendment (and not simply state law) prohibits his execution.[15]

(2) As the majority points out, under 28 U. S. C. § 2254(d) "federal courts in habeas corpus proceedings must *generally* accord a presumption of correctness to a state court's factual findings." *Ante,* at 782 (emphasis added). The presumption of correctness does not apply, however, if the habeas petitioner demonstrates "that the factfinding procedure employed by the State court was not adequate to afford a full and fair hearing." 28 U. S. C. § 2254(d)(2).[16] In the present case the trial-level sentencing procedure was conducted under a clearly unconstitutional scheme. See n. 5, *supra.* The relevant factfinder is therefore the Arizona Supreme Court, as the majority appears to acknowledge. See *ante,* at 783 (arguing that "a federal court should adhere to the *Jackson* standard even when reviewing the decision of a state appellate court that has independently reviewed the evidence"). This Court has held that the general presumption of correctness mandated by 28 U. S. C. § 2254(d) is applicable to the factual findings of state appellate courts. *Sumner* v. *Mata,* 449 U. S. 539, 545–547 (1981). The Court has also recognized, however: "[T]here might be instances . . . in which the presumption would not apply to appellate factfinding . . . because appellate factfinding procedures were not 'adequate,' see 28 U. S. C. § 2254(d)(2). For example, the question . . . might in a given case turn on credibility determinations that

---

[15] Similarly, the Eighth Amendment prohibits the imposition of a capital sentence unless the defendant is found to have killed, attempted to kill, or intended that a killing take place. *Enmund* v. *Florida,* 458 U. S. 782 (1982). It may be that the laws of many States require a similar finding. But the adequacy of the procedure by which that finding is made is a question of federal as well as state law.

[16] The presumption of correctness is also inapplicable if "the material facts were not adequately developed at the State court hearing," § 2254(d)(3), or if "the applicant did not receive a full, fair, and adequate hearing in the State court proceeding." § 2254(d)(6).

could not be accurately made by an appellate court on the basis of a paper record." *Cabana* v. *Bullock*, 474 U. S. 376, 388, n. 5 (1986).

Indeed, in the present case the inadequacy of the Arizona Supreme Court's procedure goes beyond the fact that the court did not see the witnesses and was forced to rely upon a paper record. At the times of respondent's trial and sentencing hearing, and even when his appellate briefs were submitted and oral argument was conducted, respondent had no reason to believe that the sentencer would attach particular importance to its conclusion that the defendant had "relished" the killing and inflicted "gratuitous violence" on the victim after her death.[17] The Arizona Supreme Court's opinion in *Gretzler* was issued 18 days prior to its decision in Jeffers' case—far too late for Jeffers to submit evidence or argument regarding the presence of the *Gretzler* factors.

In the present case there appears to be no dispute regarding the primary facts underlying the Arizona Supreme Court's finding of the (F)(6) circumstance. That is, respondent apparently does not deny that he struck the victim after she was dead or that he cursed her while doing so. But if there were a conflict in the testimony regarding this point, I would not regard the Arizona Supreme Court's factfinding procedures as "adequate" to resolve that conflict.

(3) In determining that Jeffers "relished" his crime and inflicted "gratuitous violence" on the victim, the Arizona Supreme Court did not simply apply determinate standards to a new set of facts. Rather, the assertion that respondent "rel-

---

[17] The Arizona Supreme Court in *Gretzler* summarized prior Arizona decisions in support of its conclusion that the (F)(6) circumstance would be established if the murderer "relished" the killing or employed "gratuitous violence." But those prior decisions did not use the terms "relish" or "gratuitous violence"; for the most part, they simply recounted the facts of the case and then concluded that the murder was "especially cruel . . . or depraved." Prior to the decision in *Gretzler*, Jeffers had no notice that the *Gretzler* factors would be accorded any particular significance in determining whether the (F)(6) factor had been established.

ished" the killing of Penelope Cheney said as much about the court's understanding of the word "relish" as it did about Jeffers' state of mind at the time of the murder. Thus, despite the prior Ninth Circuit decision holding that the (F)(6) circumstance had been adequately narrowed, the federal court could not properly limit itself to the question whether a rational factfinder might conclude that Jeffers "relished" the killing or employed "gratuitous violence." Rather, the habeas court had both the right and the duty to ask whether the Arizona Supreme Court's construction of the (F)(6) circumstance remained adequate to satisfy the Constitution *in light of its application to the case at hand.* Thus, the habeas court's review in cases of this kind *necessarily* involves a comparison between the case under review and prior state-court decisions applying the aggravating factor—not as a means of determining whether the state court "incorrectly" applied its construction of the statutory terms, but as a means of determining whether the state court's application of its construction to the instant case expands the scope of the aggravating factor in such a way as to make a previously valid limiting construction unconstitutionally broad.

(4) Indeed, I think that a comparative approach is necessary no matter what standard of review the habeas court employs. Even if the state court's finding is reviewed under a "rational factfinder" standard, the majority is wrong to say that the Court of Appeals erred in comparing Jeffers' crime to other cases in which the (F)(6) factor was established. Words like "relish" may be somewhat more precise than are "heinous" and "depraved," but they still are of less than crystalline clarity. A court attempting to apply the *Jackson* standard must ask whether a rational factfinder could believe that Jeffers "relished" the crime *as that term has been construed by the Arizona Supreme Court.* If the Arizona Supreme Court had used the word "relish" to mean one thing in each of its other decisions, and something very different in Jeffers' case, its application to Jeffers would be

arbitrary—even if both meanings could be found in a given dictionary. If the Court of Appeals departed from the "rational factfinder" standard here, it was by requiring *too close* a correlation between this case and others, not simply by employing a comparative approach.

Suppose, for example, that the Arizona Supreme Court had consistently construed the (F)(6) circumstance as requiring "physical abuse," but had found that standard satisfied only in cases where the killer subjected the victim to prolonged, severe physical suffering. Presumably that construction would be valid. See *Maynard* v. *Cartwright*, 486 U. S., at 365. Suppose that the court in a subsequent case found that the (F)(6) factor had been proved when the defendant slapped the victim once and then shot him dead. The defendant, on federal habeas, could raise two related but distinct challenges. First, the defendant might argue that no reasonable factfinder could conclude that a single slap constituted "physical abuse" *as that term had previously been construed by the Arizona Supreme Court.* (This would amount to a contention that the state court had misapplied its own rule.) Alternatively, the defendant might argue that "physical abuse" could no longer be deemed an adequate limiting construction if that phrase was construed as including a single slap. However the challenge was framed, though, the habeas court could not limit itself to the question whether a rational factfinder could conclude that the slap fell within *some* plausible definition of "physical abuse."

## III

The majority's discussion of the way in which a federal habeas court should review the application of a valid aggravating circumstance to the facts of a particular case seems to me to be flawed in significant respects. My principal disagreement, however, is with the Court's insistence on addressing the issue. The majority makes no effort to justify its holding that the Arizona Supreme Court has placed con-

stitutionally sufficient limitations on its "especially hei-
nous . . . or depraved" aggravating circumstance.    Instead
the Court relies entirely on a sentence of dictum from today's
opinion in *Walton*—an opinion which itself offers no rationale
in support of the Court's conclusion.    My dissenting opinion
in *Walton* notes the Court's increasing tendency to review
the constitutional claims of capital defendants in a perfunc-
tory manner, but the Court's action in this case goes far be-
yond anything that is there observed.
    I dissent.