Daniel Floyd DONAGHEY, Petitioner,

v.

L.E. BRUCE, Warden and Carla J. Stovall, Attorney General, Respondents.

No. 99–3189–DES.

United States District Court, D. Kansas.

Nov. 20, 2001.

Donald R. Hoffman, Jason P. Hoffman, Hoffman & Hoffman, Topeka, KS, for petitioner.

Jared S. Maag, Office of Atty. General, Topeka, KS, for respondents.

### MEMORANDUM AND ORDER

SAFFELS, District Judge.

This matter is before the court on a Petition for a Writ of Habeas Corpus (Doc. 1) brought pursuant to 28 U.S.C. § 2254. Petitioner has filed a Memorandum in Support (Doc. 2), and respondents have filed an Answer and Return (Doc. 9). No traverse, however, was filed by petitioner. For the following reasons, petitioner's request for habeas relief will be denied.

## I. BACKGROUND

### A. Factual History

In the early morning hours of January 5, 1991, Timothy Anderson ("Anderson") was working as a delivery driver for Domino's Pizza in Wichita, Kansas. An order was placed for two pizzas to be delivered to a house located at 241 North Exposition. The caller told Anderson to make the delivery at the rear of the house. It was later revealed the house was in reality abandoned. The initial phone call to Domino's and a subsequent confirmation call were made using a pay phone located near the house.

Anderson arrived at the house with the pizzas and approached the back door as instructed. Someone yelled at him to come in and he did so. Upon entering the house, the lights went out. Two individuals approached Anderson and took the pizzas; he was unable to see their faces. The two individuals demanded Anderson give them his money. Although Anderson complied, a scuffle ensued wherein Anderson was stabbed in the chest. Anderson was eventually tied up in the basement while the two individuals left the scene in Anderson's vehicle. Anderson was able to get a "quick glance" at his attackers while he was being tied up in the basement. After the two individuals left, Anderson freed himself and called the police.

Shortly after, petitioner and his eventual co-defendant, Stuart Fish ("Fish"), were involved in a car chase with police. The two were apprehended and returned to the scene. Anderson identified both petitioner and Fish as his assailants. A search of the vehicle revealed one box of pizza and a pizza warmer bag. Petitioner was found to be carrying $38 in cash and a pocket-knife.

At petitioner's jury trial, the above facts were revealed in the state's case-in-chief. Petitioner testified and denied involvement in the crimes. Petitioner implicated another person, Leroy Baker ("Baker"), as well as Fish. Petitioner testified all three men were living together at a halfway house for parolees. According to petitioner, on the night in question, the three men had been out drinking. The night supposedly ended with the men attempting to purchase alcohol at a convenience store. At some point, Fish and Baker left the store together on foot. Petitioner did not accompany the men because he wanted to find a vehicle to steal in order to travel to Salina, Kansas. According to petitioner, one hour later, the two returned to the store with a vehicle, and petitioner got into the vehicle. Thereafter, with petitioner driving the car, Baker was dropped off near the halfway house before petitioner and Fish were chased by the police. Finally, petitioner testified he fled from the police only because he feared the car was stolen. On cross-examination, however, petitioner admitted he was an ex-employee of Domino's, and he was aware of the delivery system utilized by Domino's.

Petitioner's former attorney, Tom Weilert ("Weilert"), also testified for the defense. He testified Anderson came to his office one day to talk about Anderson's identification of petitioner at the scene of

the crimes. Anderson, who had been incarcerated on an unrelated matter, had the occasion to observe petitioner while in jail. Weilert recalled Anderson telling him that petitioner did not look like the person who had robbed him. During the state's case, however, the prosecutor asked Anderson whether he was presently sure petitioner was one of the men who robbed him. Anderson responded in the positive.

Lieutenant Pamela Horn of the Wichita Police Department testified for the prosecution during rebuttal. Lt. Horn testified regarding her interview of Fish. According to Lt. Horn, Fish implicated himself and petitioner, but Fish never mentioned the participation of Baker.

On September 16, 1992, petitioner was convicted of aggravated kidnaping, aggravated robbery, aggravated burglary, and aggravated battery. On November 5, 1992, petitioner was sentenced to life imprisonment on the charge of aggravated kidnaping, fifteen years to life on the charge of aggravated robbery, five to twenty years on the charge of aggravated burglary, and five to twenty years on the charge of aggravated battery. All terms were set to run consecutive to one another.

### B. Procedural History

On December 10, 1993, petitioner's conviction was affirmed on direct appeal to the Kansas Supreme Court. *State v. Donaghey,* No. 69,038 (Kan. Dec. 10, 1993) (unpublished). On appeal, petitioner raised the sole issue of whether there was sufficient evidence to support the jury's verdict.

On December 6, 1995, petitioner filed for state habeas relief by motion pursuant to Kansas Statutes Annotated § 60–1507. In his motion, petitioner raised the following three claims relating to counsel's ineffectiveness at trial:

(1) Failed to object to the inadmissible hearsay confession of the codefendant,

implicating petitioner, presented by Lieutenant Horn.

(2) Failed to object or move to exclude the identification testimony of the victim, Timothy Anderson.

(3) Failed to subject the Prosecution's case to meaningful adversarial testing by failing to impeach State's witness's inconsistent and contradictory testimony.

(Pet'r § 1507 Mot. at 7). On August 5, 1996, without the aid of an evidentiary hearing, the state trial court denied petitioner's motion.

On April 17, 1998, the Kansas Court of Appeals affirmed the denial of petitioner's § 1507 motion. *Donaghey v. State,* No. 77,770, 1998 WL 287086 (Kan.Ct.App. Apr.17, 1998) (unpublished). On his appeal, petitioner raised the singular issue of whether "the trial court erred when it denied [petitioner's] petition filed pursuant to K.S.A. 60–1507 without appointing counsel and conducting a hearing on his claim of ineffective assistance of counsel." (Appellant Br. at 1, *Donaghey,* No. 77,770). On June 9, 1998, the Kansas Supreme Court denied review. Thereafter, on June 3, 1999, petitioner filed the instant action seeking federal habeas relief.

### II. PETITIONER'S FEDERAL CLAIMS

Petitioner raises the following ineffective assistance of counsel claims in his § 2254 petition:

(1) Trial counsel erred in failing to raise objection to the hearsay testimony of police Lieutenant Pamela Horn.

(2) Trial counsel erred in not moving to exclude the tainted and unreliable identification of the victim Tim Anderson.

(3) Trial counsel erred in not subjecting the prosecution's case to meaningful

adversarial testing, thus denying him fair trial.

(Pet'r Mem. at 2).

## III. STANDARD OF REVIEW

Under 28 U.S.C. § 2254,[1] a federal court is precluded from granting habeas relief on any claim adjudicated by a state court, unless the state court's proceeding "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," 28 U.S.C. § 2254(d)(1), or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2). *See Williams v. Taylor*, 529 U.S. 362, 405–13, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (construing the review standard in 28 U.S.C. § 2254).

■ A state court's decision is "contrary to" an established federal law if the state court reaches a different result than the Supreme Court would when presented with facts that are "materially indistinguishable from a relevant Supreme Court precedent" or if the state court "applies a rule that contradicts the governing law set forth in [Supreme Court] cases." *Williams*, 529 U.S. at 405, 120 S.Ct. 1495.

■ Additionally, the Supreme Court has clearly dictated that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). Federal habeas actions do not provide relief for errors of state law. *Id.* (citing *Lewis v. Jeffers*, 497 U.S. 764, 780, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990)).

## IV. DISCUSSION

### A. Exhaustion Requirement

■ Respondents begin their opposition to petitioner's request by arguing petitioner has failed to properly exhaust his ineffective assistance of counsel claims before the state courts. Prior to bringing a claim before a federal habeas court, a state prisoner must exhaust all state court remedies. 28 U.S.C. § 2254(b)(1)(A). *See also O'Sullivan v. Boerckel*, 526 U.S. 838, 842, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999) ("Before a federal court may grant habeas relief to a state prisoner, ... the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to the federal courts in a habeas petition."); *Dever v. Kansas State Penitentiary*, 36 F.3d 1531, 1534 (10th Cir.1994) ("The exhaustion requirement is satisfied if the federal issue has been properly presented to the highest state court, either by direct review of the conviction or in a postconviction attack.").

Respondents assert that although petitioner clearly levied all three of his present claims in his original § 1507 motion, he failed to properly present two of the claims to the Kansas Court of Appeals. As mentioned above, petitioner's appellate brief to the Kansas Court of Appeals presented the single issue of whether the state trial court erred in failing to appoint counsel and hold an evidentiary hearing. On its face, therefore, it appears petitioner failed to raise all three claims on appeal. However, within the body of petitioner's appellate brief, it is evident petitioner "fairly presented" his first claim to the Kansas Court of Appeals. *See Picard v. Connor*, 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971) (opining that to be properly

---

1. Because petitioner filed his petition for habeas relief well after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), the AEDPA applies to his petition. *See generally Lindh v. Murphy*, 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997).

exhausted, a claim must be "fairly presented to the state courts"); *Demarest v. Price*, 130 F.3d 922, 932 (10th Cir.1997) (" 'Fair presentation' of a prisoner's claim to the state courts means that the substance of the claim must be raised there."). In fact, the Kansas Court of Appeals clearly reached the claims' merits while affirming the motion's denial. *Donaghey*, No. 77,770 at 4 ("Our reading of the record leads us to conclude that the statement by Fish was admissible and that any objection would have been meritless . . . .").

As to petitioner's second and third claims, the court finds these claims were not presented to the appellate court. Petitioner's appellate brief fails to submit any discussion or argumentation regarding the claims' disposition.[2] This omission is evidenced by the Kansas Court of Appeal's decision, which is wholly devoid of any consideration of the claims' merits.

■ The petition before the court, therefore, contains both exhausted and unexhausted claims. Ordinarily, the court would be forced to dismiss the entire petition. *Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). In this case, however, the two unexhausted claims are procedurally defaulted for purposes of federal habeas review. In *Coleman v. Thompson*, 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991), the Supreme Court noted that if a petitioner fails "to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred," petition-

er's claims are procedurally defaulted for purposes of federal habeas review. 501 U.S. at 735 n. 1, 111 S.Ct. 2546. *See also Dulin v. Cook*, 957 F.2d 758, 759 (10th Cir.1992) (holding that a petitioner's failure to properly present his claims in state court for exhaustion purposes constitutes "procedural default for the purposes of federal habeas review"). Clearly, the time for presenting these claims to the Kansas Court of Appeals has long since passed.

■ For the court to consider the merits of procedurally defaulted claims, a petitioner must present both "cause" for the default and "prejudice" flowing therefrom. *See Coleman*, 501 U.S. at 750, 111 S.Ct. 2546. Petitioner fails to identify any cause for why he failed to present his claims to the Kansas Court of Appeals. With no justification[3] for reaching the claims' merits, the court is compelled to deny petitioner's second and third claims on procedural grounds.

### B. Ineffective Assistance of Counsel

The Tenth Circuit recently reiterated the standard for considering claims of ineffective assistance of counsel:

To prevail on an ineffective assistance of counsel claim, a petitioner must demonstrate (1) that representation fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defendant. *See Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Pursuant to this standard, [petitioner] must show that defense counsel's

---

**2.** Petitioner's "argument" to the Kansas Court of Appeals is limited to the following two sentences: "The trial court also ruled that trial counsel was not ineffective because he did not file a motion to suppress the victim's identification. Finally, the trial court ruled that defense counsel properly cross-examined the victim-witness." (Appellant Br. at 5, *Donaghey*, No. 77,770).

**3.** There is a second exception to the procedural default rule, which is also inapplicable in this case. A federal habeas court may reach the merits of a defaulted federal claim when the petitioner demonstrates failure to consider the claim would result in a fundamental miscarriage of justice. *See Coleman*, 501 U.S. at 750, 111 S.Ct. 2546.

performance was not simply wrong, but instead was completely unreasonable. *See Hoxsie v. Kerby,* 108 F.3d 1239, 1246 (10th Cir.1997). [Petitioner] bears a heavy burden to prevail on this claim, for he must overcome the presumption that defense counsel's actions were sound trial strategy. *See Strickland,* 466 U.S. at 689, 104 S.Ct. 2052. To show prejudice, ... petitioner must establish that, but for counsel's errors, there was a reasonable probability that the outcome of his trial would have been different. *See id.* at 694, 104 S.Ct. 2052. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *See id.*

*Gonzales v. McKune,* 247 F.3d 1066, 1072–73 (10th Cir.2001).

### 1. Failure to Object to Lt. Horn's Testimony

■ Petitioner argues his counsel was deficient in failing to raise a hearsay objection to Lt. Horn's testimony. As to this issue, the Kansas Court of Appeals ruled as follows:

A trial judge has wide discretion in determining the admissibility of a declaration against interest and may consider such factors as the nature and character of the statement, the person to whom the statement was made, the relationship between the parties, and the probable motivation of the declarant in making the statement.

While it is necessary to show the trustworthiness of the declarant, here it is inherent in the trial court's ruling, both at trial and at the 60–1507 hearing, that a minimum level of trustworthiness was established. The evidence against Donaghey was very weighty. The state-

ment at issue and counsel's failure to object came on rebuttal after Donaghey had denied any involvement whatsoever.

Our reading of the record leads us to conclude that the statement by Fish was admissible and that any objection would have been meritless and may, in fact, have been detrimental to Donaghey by drawing attention to the discrepancies in the various versions of the events.

Obviously, the jury did not believe Donaghey's version.

*Donaghey,* No. 77,770 at 4.[4]

■ In considering the two-pronged analysis of *Strickland,* the court is persuaded to leave momentarily the first issue and address whether counsel's alleged deficiency prejudiced petitioner's trial. *See United States v. Haddock,* 12 F.3d 950, 955 (10th Cir.1993) ("The Supreme Court has observed that often it may be easier to dispose of an ineffectiveness claim for lack of prejudice than to determine whether the alleged errors were legally deficient."). Within this analysis, the court must review the entire record; evaluating the totality of evidence presented against petitioner. *Strickland v. Washington,* 466 U.S. 668, 695, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) ("When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt.... In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the ... jury."). *See also United States v. Soto Hernandez,* 849 F.2d 1325, 1330 (10th Cir. 1988) (identifying the most useful way to judge counsel's performance during trial is by careful review of the record).

**4.** The court has no explanation for the Kansas Court of Appeals' reference to a § 1507 hearing. Without question, there was no hearing, for petitioner's singular argument to the Kan-

sas Court of Appeals concerned the trial court's refusal to hold a hearing. The court gives no import to this supposed typographical error.

The court concurs with the Kansas Court of Appeals' determination that the evidence against petitioner was indeed weighty. First and foremost, Anderson, the victim, was able to positively identify petitioner as one of his attackers. (Trial Tr. at 60). Petitioner's counsel subjected Anderson to thorough cross-examination regarding all aspects of his identification and credibility. Second, petitioner was apprehended by the police while driving Anderson's vehicle, which contained a pizza and a pizza warmer bag. (*Id.* at 95–98). Third, a pocketknife, with the blade extended, was found on petitioner's person. (*Id.* at 123). Fourth, a sum of cash was found on petitioner, which reasonably approximated the sum taken from Anderson. (*Id.* at 50, 126). Fifth, Anderson testified one of his assailants claimed to have worked for Domino's in the past and was familiar with the company's policies. (*Id.* at 42). Petitioner admitted on cross-examination that he had previously worked for Domino's. (*Id.* at 161–62). Finally, the prosecutor called on rebuttal an official from the halfway house where petitioner was living at the time of the robbery. The witness stated that while records existed confirming the residence of petitioner and Fish, no records revealed the existence of Baker. (*Id.* at 186).

To confront this evidence, counsel's theory of the case was premised solely on petitioner's denial of participation in the robbery and stabbing. Petitioner asked the jury to believe his claim that Baker was the second perpetrator. As noted by the Kansas Court of Appeals, Lt. Horn's testimony was offered to rebut petitioner's assertion.

The court finds, in light of the mountain of compelling evidence indicating petitioner's guilt, that any deficiency in counsel's failure to object to Lt. Horn's testimony does not reasonably call the outcome of the trial into question. In other words, even if counsel's objection would have been proper and the statements were excluded, the court finds its confidence in the jury's verdict is unshaken. Lt. Horn's testimony was but one more piece of evidence implicating petitioner. Without such testimony, the jury was still faced with a positive identification by the victim coupled with multiple pieces of evidence tying petitioner to the crime. The court finds no constitutional error in the facts found or the law applied by the Kansas Court of Appeals on this issue.

Having concluded petitioner failed to sufficiently demonstrate any prejudice flowing from his counsel's alleged deficiency, the court is persuaded to forgo its analysis of counsel's actual performance. *See Foster v. Ward,* 182 F.3d 1177, 1184 (10th Cir.1999) (noting that courts may address the performance and prejudice components in any order but need not address both if the petitioner fails to make a sufficient showing of one). All relief will be denied as to this issue.

## V. CONCLUSION

Having found relief unwarranted under petitioner's first claim, the court denies relief on its merits. The court did not reach the merits of petitioner's second and third claims because they were procedurally defaulted for purposes of federal habeas review. The writ shall be denied.

**IT IS THEREFORE BY THIS COURT ORDERED** that petitioner's Petition for a Writ of Habeas Corpus (Doc. 1) brought pursuant to 28 U.S.C. § 2254 is denied.