**Robert Alvin BLACK, Petitioner,**

v.

**T. VOSS, Superintendent, Respondents.**

**No. EDCV 06–0686 R(AJW).**

United States District Court,
C.D. California,
Eastern Division.

April 9, 2008.

Robert Alvin Black, Coalinga, CA, pro se.

Kyle Niki Cox Shaffer, Caag Office of Attorney General of California, San Diego, CA, for Respondents.

## ORDER ADOPTING REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

MANUEL REAL, District Judge.

The Court has reviewed the entire record in this action, the Report and Recommendation of Magistrate Judge ("Report"), and petitioner's objections. The Court concurs with and adopts the findings of fact, conclusions of law, and recommendations contained in the Report after having

made a *de novo* determination of the portions to which objections were directed.

## REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

ANDREW J. WISTRICH, United States Magistrate Judge.

### Proceedings

On October 8, 2002, the Riverside County District Attorney filed a petition alleging that petitioner was a sexually violent predator within the meaning of section 6600(a) of the California Welfare and Institutions Code. [Clerk's Transcript ("CT") 1–3]. On July 23, 2003, before trial on the petition commenced, petitioner filed a habeas petition in the Riverside County Superior Court arguing that the prosecution had failed to plead and prove a recent overt act to satisfy the necessary element of current dangerousness. [Lodgment 6]. The petition was denied. [Lodgment 7]. Petitioner filed a habeas petition in the California Court of Appeal, raising the same argument. The state appellate court denied the petition on August 13, 2003. [Lodgment 9].

On January 10, 2005, petitioner's jury trial commenced. On January 20, 2005, the jury found true the allegation that petitioner is a sexually violent predator. [CT 445]. Petitioner was committed to the California State Department of Mental Health for two years. [CT 446].[1]

Petitioner appealed to the California Court of Appeal which affirmed the judgment on March 2, 2006. [Lodgment 5]. The California Supreme Court denied petitioner's petition for review on May 15, 2006. [Lodgment 11].

### Petitioner's Contentions

Petitioner raises the following claims for relief:

1. The prosecution should have been required to plead and prove a recent overt act to show that petitioner was currently dangerousness. [Petition at 1–8].

2. The evidence was insufficient to prove that petitioner is likely to commit a sexually violent offense if released from custody. [Petition at 9–14].

3. Petitioner's counsel provided ineffective assistance because he failed to object to the prosecutor's questioning of Dr. Donaldson about the Washington State rape case. [Petition at 15–19, 20–28].

### Standard of review

This case is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See Hubbart v. Knapp*, 379 F.3d 773, 778–779 (9th Cir.2004) (applying the AEDPA to a petition challenging detention pursuant to Sexually Violent Predator Act). As explained by the Supreme Court, the AEDPA "places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court." *Williams v. Taylor*, 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

---

**1.** As respondent concedes [*see* Respondent's Status Report], although petitioner's two-year term expired and he has been re-incarcerated based upon new findings under the SVPA, this petition is not moot. *See Hubbart v. Knapp*, 379 F.3d 773, 777 (9th Cir.2004) (habeas petition challenging a two-year commitment under California's Sexually Violent Predator Act was found to "evade review" because the duration of the commitment was too short to be fully litigated prior to its expiration), *cert. denied*, 543 U.S. 1071, 125 S.Ct. 913, 160 L.Ed.2d 807 (2005).

Under the AEDPA, a federal court may not grant a writ of habeas corpus on behalf of a person in state custody "with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

Section "2254(d)(1)'s 'contrary to' and 'unreasonable application' clauses have independent meaning." *Bell v. Cone,* 535 U.S. 685, 694, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002).

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams,* 529 U.S. at 412–13, 120 S.Ct. 1495; *Lockyer v. Andrade,* 538 U.S. 63, 73–76, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003); *see Weighall v. Middle,* 215 F.3d 1058, 1061 (9th Cir.2000) (discussing *Williams* ).

While only Supreme Court precedent is controlling under the AEDPA, Ninth Circuit case law is persuasive authority "for purposes of determining whether a particular state court decision is an unreasonable application of Supreme Court law."

*Vlasak v. Superior Court of California ex rel. County of Los Angeles,* 329 F.3d 683, 687 (9th Cir.2003) (quoting *Luna v. Cambra,* 306 F.3d 954, 960 (9th Cir.2002) (internal quotation marks and citation omitted), *amended,* 311 F.3d 928 (9th Cir.2002)).

To the extent that petitioner's claims have been denied by the state courts without explanation, the standard of review is unchanged. *Delgado v. Lewis,* 223 F.3d 976, 981–982 (9th Cir.2000). A federal court simply conducts an independent review of the record to determine whether the state courts' application of controlling federal law was objectively reasonable. *Delgado,* 223 F.3d at 981–982.

Finally, the AEDPA provides that state court findings of fact are presumed to be correct unless the petitioner rebuts that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

### Discussion

### 1. Sufficiency of the evidence

Petitioner contends that the evidence was insufficient to support the jury's finding that he is a sexually violent predator because it did not show that he is likely to commit a sexually violent offense if he is released from custody.

Section 6600(a)(1) defines the term "sexually violent predator" as "a person who has been convicted of sexually violent offense against two or more victims and who has a diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior." Cal. Welf. & Inst. Code § 6600(a)(1). Pursuant to section 6600, the prosecution was required to establish, beyond a reasonable doubt, that petitioner had been convicted of at least two separate sexually violent offenses, that he has a "diagnosed mental disorder" which makes him a danger to the health

and safety of others, and that by reason of the mental disorder, it is likely that he will engage in sexually violent criminal behavior.

The following evidence was presented at trial.

In 1986, petitioner plead guilty to committing a lewd and lascivious act on a child under the age of 14, and was sentenced to six years in prison. [Reporter's Transcript on Appeal ("RT") 301]. The conviction was based upon an incident that occurred on June 8, 1986. Michael Bates lived in a one-room apartment with Mary Ann Smith and her four children, including a six-year old girl named Ethel Rose. Petitioner had been living in his car outside of the apartment for about two weeks. At approximately 10:20 a.m. on June 8, 1986, Bates was sleeping in the apartment. Ethel was sleeping on a couch. Bates heard a noise and turned over. He saw petitioner with his hands in Ethel's underwear. Bates did not know how petitioner got into the room. Bates jumped up and hit petitioner. Petitioner ran across the street. Bates called 911. [RT 167–173].

Officer Joseph Underhill responded to the 911 call. Bates described the incident and petitioner was arrested. Officer Underhill interviewed petitioner. Petitioner said that he had rubbed Ethel Roses's leg and denied improperly touching her. When Officer Underhill asked petitioner why Bates would falsely accuse him, petitioner admitted that he touched Ethel's vagina. He also said that he had molested her on two other occasions. [RT 503–510]. At the trial on the petition filed pursuant to the Sexually Violent Predator Act ("SVPA") trial, petitioner denied that he had molested Ethel on two prior occasions. He explained that he had touched Ethel's vagina without thinking, and that "there was no sexual arousal or nothing like that." He said that he went inside the apartment to "check on the kids," as a "good Samaritan." [RT 270–273, 276].

Based upon his guilty plea, petitioner was sentenced to probation, with one year in jail. His probation was revoked more than once due to petitioner's failure to attend counseling sessions and changing his residence without informing his probation officer. [RT 92–93]. Petitioner was paroled in 1994. [RT 93–94].

In December, 1994, petitioner again pleaded guilty to a lewd and lascivious act on a child under the age of 14. The following served as the factual basis for this offense.

In November 1994, five-year old Tyler was staying at a motel in Ontario. Tyler and several other boys went into petitioner's motel room to watch television. The other boys eventually left, and Tyler and petitioner were alone. Petitioner asked Tyler to go into the bathroom, and Tyler did so. Petitioner orally copulated Tyler. Tyler fled and told his mother what happened. She called the police, and petitioner was arrested. [RT 295, 364–369, 434–438].

Officer Alan Wapner interviewed petitioner at the police station. Petitioner admitted orally copulating Tyler. Petitioner pleaded guilty and was sentenced to state prison for a term of six years. [RT 301, 436–438]. Petitioner was released in 1999.

In 2000, petitioner appropriated several pieces of furniture. He pleaded guilty to grand theft and was sentenced to prison for two years and eight months. [Lodgment 5 at 4].

In October, 2002, prior to petitioner's release from prison, the Riverside County District Attorney filed a petition for commitment, alleging that petitioner is a sexually violent predator ("SVP").

Dr. Shoba Sreenivasan, an expert in sexually violent predators, testified that she had evaluated petitioner in 1999. She had attempted to evaluate petitioner in 2002, 2003, and 2004, but petitioner refused to be interviewed. Dr. Sreenivasan opined that petitioner's 1986 and 1994 convictions were qualifying offenses under section 6600(a). She explained that when she evaluated petitioner in 1999, she concluded that he did not qualify as a sexually violent predator because she was not sure whether the conduct underlying his 1986 conviction was predatory in nature. A change in the law, however, eliminated the need for the qualifying offenses to be predatory in nature. [RT 95–96].

Dr. Sreenivasan reviewed petitioner's prior psychiatric evaluations, probation officers' reports, legal documents, and mental health records from Atascadero State Hospital (where petitioner had been placed since June 2002), and diagnosed petitioner with pedophilia, non-exclusive type, and alcohol abuse in institutional remission. [RT 101]. The non-exclusive diagnosis meant that petitioner is also attracted to adult females. [RT 106]. According to Dr. Sreenivasan, petitioner admitted during the 1999 interview that he felt semi-attracted to children. [RT 103]. Dr. Sreenivasan explained that pedophilia is a chronic lifelong disorder. [RT 104]. Petitioner scored 22 on the psychopathy checklist, which placed him at the moderate range for psychopathy. [RT 113]. Petitioner scored a five on the Static–99 actuarial tool, which placed him in the medium to his risk category for committing another sexual offense if released from custody. [RT 114–115]. Based upon his Static–99 score, the probability that he would commit a sexual offense if released from custody is as follows: (1) a 33 percent chance within five years; (2) a 38 percent chance within 10 years; and (3) a 40 percent chance within 15 years. [RT 151]. Based

upon petitioner's scores, his history of unsuccessful probation supervision, his failure to complete sex offender treatment, and the fact that he re-offended while he was on parole, Dr. Sreenivasan opined that he was likely to commit a sexually violent offense if released from custody. [RT 112, 134]. She also testified that the recidivism rate for pedophiles stays flat until the individual reaches his fifties, and then it decreases. [RT 127].

Dr. Jeff Davis also testified on behalf of the prosecution. He interviewed petitioner for three hours on July 26, 2004, and reviewed records from Atascadero State Hospital, physicians' progress notes, evaluations, nursing notes, probation officers' reports, and police reports. Petitioner denied that he had molested Ethel, insisting that he was simply pulling up her covers, and explaining that the police had coerced him into admitting that he touched Ethel. [RT 182–188]. Petitioner said that he did not really remember the 1994 incident in the motel. Dr. Davis opined that the 1986 and 1994 incidents constituted qualifying offenses. Dr. Davis testified that in 1989, petitioner was in the backyard of his parent's residence. Two seven-year old girls were present. Petitioner's mother reported to petitioner's parole officer that petitioner had an erection. Petitioner's stepfather threw him out of the house. Petitioner told Dr. Davis that the story was not true and that his stepfather fabricated the accusation so he could remove petitioner from the residence. [RT 194, 285–287].

Dr. Davis also diagnosed petitioner with pedophilia, sexually attracted to males and females, non-exclusive type. He defined pedophilia as having intense fantasies or urges to have sexual relations with children that last six months or more. The fantasies or urges must cause distress in the person's functioning. [RT 201]. The

fact that a male victim was involved increased the likelihood of recidivism. The facts that petitioner molested a five-year old girl while a 16 year-old male was present, and violated his parole by being around children, suggested that petitioner had strong urges to have sexual relations with children. Dr. Davis further opined that petitioner had no insight into his conduct. He diagnosed petitioner with an antisocial personality disorder. Petitioner scored six on the Static–99, which placed him in the high risk category for committing another sexual offense if released from custody. [RT 206–223, 232].

Dr. Dana Putnam also testified for the prosecution. He evaluated petitioner in 2004, conducting a three-hour interview. He diagnosed petitioner with pedophilia, non-exclusive type, and alcohol abuse. [RT 374–381]. Petitioner did not admit to fantasizing about sexual relations with children during the interview. Dr. Putnam opined that petitioner met the criteria to be classified as a sexually violent predator. In arriving at his conclusion, Dr. Putnam considered the facts that petitioner, after engaging in sexual behavior with a child, and experiencing severe negative consequences, including serving time in prison, again engaged in pedophilic behavior. Dr. Putnam said that although petitioner's age (55) lowered his risk somewhat, it did not lower it enough that he no longer met the threshold. Dr. Putnam noted that petitioner had reported an existing sex drive and indicated that he thought about sex for five minutes a day. [RT 382–402].

Two psychologists testified on petitioner's behalf. Dr. Mary Jane Alumbaugh evaluated petitioner in 1999, 2002, 2003, and 2004. She diagnosed petitioner with pedophilia, non-exclusive type, an antisocial personality, and alcohol abuse. She assigned petitioner a score of three on the Rapid Risk Assessment of Sexual Offense Recidivism ("RRASOR") test, which placed him in a moderate risk category. She gave him a score of six on the Static–99, which would have placed him in the high risk category for committing another sexual offense if released from custody. However, she believed that because the Static–99 measured risk based upon criminal activity as opposed to sexual deviancy, the RRASOR was the more appropriate measurement. She acknowledged that her view of using the RRASOR and disregarding the Static–99 was not a commonly accepted practice. [RT 315–332]. Dr. Alumbaugh opined that petitioner posed a moderate risk to commit a sexual offense if released from custody, but believed that he could be managed in the community and did not require the intensive treatment structure of Atascadero State Hospital. [RT 327]. She noted a sharp decrease in sexual misconduct by pedophiles after the age of 50. In sum, she did not believe that petitioner met the criteria to be classified as a sexually violent predator. [RT 332].

Dr. Theodore Donaldson testified that he interviewed petitioner on June 26, 2003, and reviewed relevant records. Dr. Donaldson did not diagnose petitioner with pedophilia. He concluded that petitioner did not have a diagnosable mental disorder, explaining that petitioner's acts of molestation were driven not by a need for sexual gratification, but rather, by opportunity. He opined that petitioner does whatever is convenient at the moment, whereas pedophilia requires a sexual preference for children; it is not merely "opportunistic acting out." He further opined that an individual cannot be a pedophile if he or she has not acted on it until age 36 (as was true of petitioner). He described petitioner as a criminal who had been punished for his crimes.

Dr. Donaldson testified that the reliability and validity of the Diagnostic and Sta-

tistical Manual ("DSM") diagnosis of pedophilia has not been demonstrated, stating that it had not been accepted by "many people." He opined that someone could molest children repeatedly yet not be a pedophile, explaining that some people believe it is acceptable to have sex with children and do not care about the consequences. Although petitioner's score on the Static–99 was six, Dr. Donaldson believed that there was no evidence that petitioner could not control his behavior and that his repeat behavior was not conclusive on the issue. [RT 439–478].

Dr. Donaldson acknowledged that he had been removed from the SVPA panel after conducting approximately 20 evaluations while under contract with the Department of Mental Health. He was terminated due to "conceptual disagreements regarding prediction." [RT 441, 458].

Petitioner also testified, stating that he did not believe that he was a pedophile because his activity amounted only to sporadic isolated incidents over an eight year period. [RT 300–308].

The jury found that petitioner was a sexually violent predator. [CT 445]. Petitioner was committed to the custody of the California State Department of Health for two years. [CT 446]. Petitioner appealed.

The California Court of Appeal rejected petitioner's claim that the evidence was insufficient to support the jury's finding. As the state appellate court explained:

> As previously indicated, to prove that appellant was a SVP within the meaning of section 6600, subdivision(a), it was the prosecution's burden to establish that (1) he had been convicted of two separate sexually violent offenses; (2) he had a diagnosable mental disorder which made him a danger to he health or safety of others; (3) his disorder makes it likely that he will engage in sexually violent criminal conduct if released; and (4) his

sexually violent criminal conduct will be predatory in nature. Appellant challenges the third element only, contending that he prosecution failed to establish that he presented as "serious and well-founded risk" of committing a sexually violent offense if released from custody.

Appellant maintains that the only factual support for a conclusion that he was likely to engage in sexually violent offense were the two incidents underlying his convictions and the incident at his parents' home. He contends we should focus our attention on the fact that the two qualifying offenses were separated by seven years, that his first offense was not committed until he was 36 years old, and that at 55 years old, his age is a "significant mitigating factor for the risk that he will commit another offense if released from custody." In making this argument, however, he dwells only on the testimony of doctors Alumbaugh and Donaldson and ignores that of the prosecution's witnesses, all of whom testified that based upon clinical test scores he was in the high risk offender category. Additionally, these three psychologists had considered the fact that, while the degree of risk may be lower for someone of appellant's age, this mitigating factor was insufficient to overcome the aggravating ones in this case. That Dr. Alumbaugh viewed appellant's age as indicative of a decreased risk and found that he could therefore be managed on an outpatient basis does not militate against the substantial evidence to the contrary. Indeed, as the People point out, the jury was free to disregard what appellant's witnesses had to say, which they apparently did.

Taking another tack, appellant cites several law review articles for the proposition "predicting human behavior is an

inherently difficult process." He asserts "[t]he psychiatric community largely has rejected the notion that mental health professionals can predict behavior. Hence, it is simply implausible that any psychologist could reliably predict that an individual will commit specific acts in the future." On that basis, he contends that the clinical opinions of the prosecution's expert witnesses cannot support a finding beyond a reasonable doubt that he was likely to engage in sexually violent behavior. We are not impressed.

Pursuant to section 6601, subdivision(c), in order to determine if an individual is a SVP, he or she must be evaluated "in accordance with a standardized assessment protocol, developed and updated by the State Department of Mental Health, to determine whether [he or she] is a sexually violent predator as defined in [the SVPA]. The standardized assessment protocol shall require assessment of diagnosable mental disorders, as well as various factors known to be associated with the risk of reoffense among sex offenders. Risk factors to be considered shall include criminal and psychosexual history, type, degree, and duration of sexual deviance, and severity of mental disorder." Moreover, "the evaluators may consider any factor which, in their professional judgment, is relevant to the ultimate issue whether the person is a substantial danger to reoffend if free in the community without any conditions, supervision, monitoring, or mandatory treatment in the Director's custody."

Thus, the Legislature has spelled out the requirements for finding an individual to be a SVP. Adhering to those requirements, three mental health professionals testifying on behalf of the People agreed that appellant was a pedophile who posed a substantial risk of reoffending if he were released into the commu-nity. In reaching their conclusions, the experts considered such factors as appellant's failure to complete treatment, his pedophilic behavior while on parole, his alcohol abuse as a means of disinhibiting pedophilic tendencies, and the effect of his antisocial personality on his sexual deviancy.

Appellant does not assert error in the formulation of the experts' opinions. Rather, he questions the reliability of the experts' prediction that he will likely reoffend. While we have no reason to dispute the notion that predicting human behavior is an inherently difficult process, "[i]n civil commitment cases, where the trier of fact is required by statute to determine whether a person is dangerous or likely to be dangerous, expert prediction may be the only evidence available." We are satisfied that the evidence represented supports the jury's finding that appellant met the criteria of the SVPA.

[Lodgment 5 at 12–15 (citations omitted)].

In reviewing the sufficiency of the evidence in a habeas corpus proceeding, the test is whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Lewis v. Jeffers*, 497 U.S. 764, 781, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990) (citation omitted); *see Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Smith v. Mitchell*, 437 F.3d 884, 889 (9th Cir.2006), *judgment vacated*, — U.S. ——, 127 S.Ct. 2126, 167 L.Ed.2d 861 (2007), *judgment reinstated*, 508 F.3d 1256 (9th Cir.2007). All evidence must be considered in the light most favorable to the prosecution, *Lewis*, 497 U.S. at 782, 110 S.Ct. 3092, and if the facts support conflicting inferences, a reviewing court "must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts

in favor of the prosecution, and must defer to that resolution." *Jackson,* 443 U.S. at 326, 99 S.Ct. 2781; *Bruce v. Terhune,* 376 F.3d 950, 957 (9th Cir.2004); *Turner v. Calderon,* 281 F.3d 851, 882 (9th Cir.2002). Furthermore, under the AEDPA, federal courts "must apply the standards of *Jackson* with an additional layer of deference." *Juan H. v. Allen,* 408 F.3d 1262, 1274 (9th Cir.2005), *cert. denied,* 546 U.S. 1137, 126 S.Ct. 1142, 163 L.Ed.2d 1000 (2006).

■ As the California Court of Appeal reasonably concluded, the expert opinions of Drs. Sreenivasan, Davis, and Putnam support the jury's conclusion that petitioner is likely to commit a sexually violent offense if released. Further, the fact that predictions of human behavior are generally difficult to make does not mean that the jury could not have found the opinions of these three doctors persuasive and credible. Petitioner's claim essentially asks this Court to re-weigh the evidence, something that this Court may not do.

Petitioner also alleges that he evidence was insufficient to prove that he had a diagnosable mental disorder, but four of the five doctors diagnosed petitioner with pedophilia. Dr. Donaldson's opinion that the DSM diagnosis of pedophilia had not "been demonstrated" does not render the other four doctors' opinions insufficient.

After performing an independent review of the record, it is apparent that the state court's determination that the evidence was sufficient to support the jury's verdict was neither contrary to, nor an unreasonable application of, clearly established federal law.

### 2. "Recent overt act"

Petitioner complains that the trial court and the prosecution failed to plead and prove a "recent overt act" to satisfy the necessary element of dangerousness. [Petition at 1–7].[2]

Petitioner's allegation does not present a cognizable federal claim. A federal court may entertain an application for a writ of habeas corpus by a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *see Estelle v. McGuire,* 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). As pleaded, petitioner's claim involves solely the interpretation and application of state law.

■ Furthermore, petitioner's claim lacks legal support. As set forth above, section 6600(a) of the California Welfare and Institutions Code requires the prosecution to prove that the petitioner (1) had been convicted of two separate sexually violent offenses; (2) had a diagnosable mental disorder which made him a danger to the health or safety of others; (3) his disorder made it likely that he will engage in sexually violent criminal conduct if released: and (4) his sexually violent criminal conduct will be predatory in nature. *Cooley v. Superior Court,* 29 Cal.4th 228, 243, 127 Cal.Rptr.2d 177, 57 P.3d 654 (2002). The statute does not require that the prosecution must prove that petitioner committed a "recent overt act" in order to establish that he was dangerous,[3] and peti-

---

**2.** Respondent argues that petitioner has not exhausted his state remedies with regard to this claim, but also argues that the claim lacks merit. Because petitioner's claim does not present even a colorable claim for relief, it should be denied on the merits notwithstanding any alleged non-exhaustion. *See* 28

U.S.C. § 2254(b); *Cassett v. Stewart,* 406 F.3d 614, 623–624 (9th Cir.2005), *cert. denied,* 546 U.S. 1172, 126 S.Ct. 1336, 164 L.Ed.2d 52 (2006).

**3.** To the contrary, the statute provides that "danger to the health and safety of others" does not require proof of a recent overt act

tioner points to no authority imposing such a requirement.[4]

### 3. Ineffective assistance of counsel

■ Petitioner alleges that his trial attorney was ineffective because he failed to object to a question the prosecutor posed during his cross-examination of Dr. Donaldson. [Petition at 15–27]. The facts relevant to petitioner's claim are as follows.

During his cross-examination of Dr. Donaldson, the prosecutor asked about a particular Washington State SVP case in which Dr. Donaldson had testified as an expert. Dr. Donaldson explained that in the Washington case, he had told the jury that he "did not think there was evidence for paraphiliac coercive disorder, which would be a diagnosis for rape, which is even harder than pedophilia, and the jury believed it." [RT 478]. The following colloquy then took place:

Q. And they [the jury] let him out?

A. They let him out.

Q. And you know what happened?

A. Sure. He raped three women.

Q. He raped three women, didn't he, Dr. Donaldson?

A. No, he did not. He attempted to rape on [sic] two women. I don't know about the other one. In fact, much of that stuff is sealed at the moment.

Q. And one of the women that he raped after he got out, he threw bleach on that woman, didn't he Dr. Donaldson?

A. I don't know. There was some early allegation. But that material has since been—is not supposed to out, incidentally. I don't know. Whatever he did, he was a big, violent man. I never said anything about that. I testified that he was a dangerous man. He had always been a dangerous man and a violent man, but it wasn't because he had a mental disorder. It was because he was a bad ass, and that's all there was to it. He was a bad guy. He was not mentally disordered.

Q. Those are the words you used before that jury?

A. Not quite. It was pretty close, though.

Q. You were wrong about that, weren't you, Dr. Donaldson?

A. No. He is a bad man, and he's a violent man, but he is not a paraphiliac rapist.

Q. You told the jury that he wasn't a paraphiliac rapist, and yet eight months after he was released, he went out and raped again. You don't think that makes him a paraphiliac rapist?

A. Criminal behavior does not describe paraphiliac rape, no.

Q. All right. So let me ask you a hypothetical. If Mr. Black gets out and goes out and molests a child in six months who is five years old, will that mean nothing to you?

MR. ILLMAN [petitioner's counsel]: Objection. Argumentative.

THE COURT: Overruled.

THE WITNESS: That's very inflammatory. I think the issue is whether or not there would be some evidence in the next time he molests a child that [it] is due to sexual psychopathology because he just doesn't care.

[RT 478–480].

The California Court of Appeal rejected petitioner's claim. The appellate court as-

---

while the offender is in custody. Cal. Welf. & Inst.Code § 6600(d); *see In re Calhoun*, 121 Cal.App.4th 1315, 1323, 18 Cal.Rptr.3d 315 (2004).

**4.** The cases petitioner relies upon interpret a Washington statute and are inapposite. *See* [Petition at 3 (citing *In re Young*, 122 Wash.2d 1, 857 P.2d 989 (1993))].

sumed, without deciding, that although SVPA proceedings are civil in nature, petitioner was entitled to the effective assistance of counsel under the Sixth Amendment. Nevertheless, the appellate court concluded that petitioner had failed to establish that he was prejudiced by his counsel's allegedly deficient performance. [Lodgment 5 at 17]. As it explained:

> [W]e find that this case was not, as appellant asserts, a "close one." Indeed, three independent psychologists all concluded that appellant met the criteria of the SVPA, a result which we have already determined is amply supported by the evidence. Simply stated, we fail to see how the result would have been different had the challenged testimony been excluded. As the People point out, Dr. Donaldson's opinion was based upon a "wholesale rejection of the diagnostic manual generally accepted and used in his field," an opinion which the jury could reasonably have rejected even if they had not heard the challenged testimony.
>
> Nor is there any merit to appellant's contention the court erred in overruling defense counsel's objection to the prosecution's inquiry as to whether Dr. Donaldson cared if appellant was released from custody and then molested another child. Contending that the question was "not relevant, and was improper under section 352," he argues it "was designed to merely inflame the passions of the jury by suggesting the Dr. Donaldson was somehow indifferent if appellant molested a child."
>
> \*   \*   \*   \*   \*   \*
>
> [E]ven if the issue had been preserved for review and we were to find that the

court erred in overruling the defense objection, any error would be harmless. Although Dr. Donaldson himself characterized the question as "very inflammatory," he responded by reasserting his position that appellant was not likely to reoffend if released. We therefore fail to see how the question—or the response—could have had any prejudicial impact upon the jury, or how a different outcome would have resulted had the objection been sustained.

[Lodgment 5 at 17–19 (citations omitted) ].

The Sixth Amendment guarantees that a criminal defendant will not be convicted without the effective assistance of counsel.[5] *Strickland v. Washington*, 466 U.S. 668, 685–686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In order to collaterally attack a conviction based upon the alleged ineffective assistance of his attorney, petitioner must satisfy the two prerequisites set forth by the Supreme Court in *Strickland*. First, petitioner must identify the acts or omissions of counsel that were not the result of reasonable professional judgment. *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052. Second, petitioner must prove that counsel's deficient performance prejudiced his defense. *Strickland*, 466 U.S. at 687, 693, 104 S.Ct. 2052. As the Ninth Circuit has explained the nature of the prejudice requirement,

> [t]hough it is not enough for petitioner to establish merely that "the errors had some conceivable effect on the outcome of the proceeding," he is not required to "show that counsel's deficient conduct more likely than not altered the outcome in the case." To prove prejudice, petitioner must demonstrate only that "there is a reasonable probability that,

---

**5.** The Court assumes, without deciding, that the right to the effective assistance of counsel applies to proceedings under the SVPA. *See Woodard v. Mayberg*, 242 F.Supp.2d 695, 707

(N.D.Cal.2003) (applying the Sixth Amendment right to effective assistance of counsel to an SVPA proceeding).

but for counsel's unprofessional errors, the result of the proceeding would have been different," with a reasonable probability defined as "a probability sufficient to undermine confidence in the outcome."

*Lord v. Wood,* 184 F.3d 1083, 1085 (9th Cir.1999), *cert. denied,* 528 U.S. 1198, 120 S.Ct. 1262, 146 L.Ed.2d 118 (2000) (quoting *Strickland,* 466 U.S. at 693–694, 104 S.Ct. 2052).

As the state appellate court reasonably concluded, petitioner has not demonstrated that his counsel's allegedly deficient performance prejudiced him. Considering the strength of the prosecution's evidence and the fact that Dr. Donaldson's credibility already was impeached based upon his removal from the SVPA panel by the Department of Mental Health and his sweeping rejection of the DSM's diagnosis of "pedophilia," there is no reasonable probability that the outcome would have been more favorable to petitioner even if his counsel successfully had objected to the prosecutor's questions regarding the unrelated Washington State case.

For these reasons, the state court's determination of petitioner's claim was neither contrary to, nor an unreasonable application of, clearly established federal law.

### Conclusion

It is recommended that the petition be denied.

### PROPOSED JUDGMENT

**It is hereby adjudged** that the petition for a writ of habeas corpus is **denied.**